No. 03-1613C
Judge Wolski

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BELL BCI COMPANY,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S MOTION TO DISMISS COUNT VI, AND FOR PARTIAL SUMMARY JUDGMENT REGARDING ACCORD AND SATISFACTION

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

BRYANT G. SNEE
Assistant Director

KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
DOUGLAS KORNREICH
KRYSTAL A. JORDAN
Attorneys
Procurement, Fiscal and Information Law Branch
Office of General Counsel
Department of Health and Human Services

June 3, 2005

# TABLE OF CONTENTS


STATEMENT OF THE CASE AND SUMMARY OF MATERIAL FACTS . . . . . . . 1

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I. Legal Standards . . . . . . . . . . . . . . . . . . . . . 5

II. The Court Lacks Subject Matter Jurisdiction To Adjudicate Bell's Promissory Estoppel Count . . . . . . 6

III. Accord And Satisfaction Bars Recovery Of Damages Arising From Changes For Which Bell Was Compensated Under Bilateral Modifications 93 Through 140 . . . . . 7

A. Bell Reserved No Rights In Modifications 93-140 . 8

B. Bell Also Released All Claims Within The Subject Matter Of Modifications 93-140 . . . . . . 9

C. Bell Cannot Pursue Claims For Damages Attributed To The Changes Covered By Modifications 93-140 . . . . . . . . . . . . . . . 10

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . 13

# TABLE OF AUTHORITIES

## FEDERAL CASES

Anderson v. Liberty Lobby, Inc.,
477 U.S. 242 (1986) . . . . . . . . . . . . . . . . . . . . 6

Atlantic Dry Dock Corp. v. United States,
773 F. Supp. 335 (M.D. Fla. 1991) . . . . . . . . . . . . . 10

Brock & Blevins Co. v. United States,
170 Ct. Cl. 343 F.2d 951 (1965) . . . . . . . . . . . . . . 8

Cannon Constr. Co. v. United States,
162 Ct. Cl. 319 F.2d 173 (1963) . . . . . . . . . . . . . . 9

Celotex Corp. v. Catrett,
477 U.S. 317 (1986) . . . . . . . . . . . . . . . . . . . . 6

Chesapeake & Potomac Tel. Co. Of Va. v. United States,
228 Ct. Cl. 654 F.2d 711 (1981) . . . . . . . . . . . . . . 8

Conley v. Gibson,
355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . 6

Fru-Con Constr. Co.,
ASBCA No. 53,544, 2005 WL 874471 (April 14, 2005) . . . 10

Heckler v. Community Health Servs.,
467 U.S. 51 (1984) . . . . . . . . . . . . . . . . . . . . . 7

Hercules Inc. v. United States,
516 U.S. 417 (1996) . . . . . . . . . . . . . . . . . . . . 7

Jackson Constr. Co. v. United States,
62 Fed. Cl. 84 (204) . . . . . . . . . . . . . . . . . . 2, 8, 11

La Mirage, Inc. v. United States,
44 Fed. Cl. 192 (1999) . . . . . . . . . . . . . . . . . . . 7

Lindsay v. United States,
295 F.3d 1252 (Fed. Cir. 2002) . . . . . . . . . . . . . . 6

Mayfair Constr. Co.,
NASA BCA No. 578-12, 80-1 BCA ¶ 14,440 . . . . . . . . . . 11

McLain Plumbing & Elec. Serv., Inc. v. United States,
30 Fed. Cl. 70 (1993) . . . . . . . . . . . . . . . . . 8

Mil-Spec Contrs., Inc. v. United States,
835 F.2d 865 (Fed. Cir. 1987) . . . . . . . . . . . . . 8

Niko Contrg. Co. v. United States,
39 Fed. Cl. 795 (1997) . . . . . . . . . . . . . . . . 10

Northrop Grumman Corp. v. United States,
42 Fed. Cl. 1 (1998) . . . . . . . . . . . . . . . . . 7

Pacific Gas & Elec. Co. v. United States,
3 Cl. Ct. 329, 340 (1983),
aff'd, 738 F.2d 452 (Fed. Cir. 1984) . . . . . . . . . . 7

Parry & Wallis, Inc. v. United States,
192 Ct. Cl. 427 F.2d 722 (1970) . . . . . . . . . . . . 10

Rumsfeld v. United Technols. Corp.,
315 F.3d 1361 (Fed. Cir. 2003) . . . . . . . . . . . . 7

Safeco Credit v. United States,
44 Fed. Cl. 406 (1999) . . . . . . . . . . . . . . . . 10

Seeds & Derham v. United States,
92 Ct. Cl. 97, 110 (1941) . . . . . . . . . . . . . . . 8

Sweats Fashions, Inc. v. Pannill Knitting Co.,
833 F.2d 1560 (Fed. Cir. 1987) . . . . . . . . . . . . 6

Valcon II, Inc. v. United States,
26 Cl. Ct. 393, 397 (1992) . . . . . . . . . . . . . . 8

Zacharin v. United States,
213 F.3d 1366 (Fed. Cir. 2000) . . . . . . . . . . . . 7

STATUTES

28 U.S.C. § 1491 . . . . . . . . . . . . . . . . . . . . 7

41 U.S.C. § 605(a) . . . . . . . . . . . . . . . . . . . 2

INDEX TO DEFENDANT'S APPENDIX

National Institutes of Health Building 50 description from Bell Construction website . . . . . . . . . . 1

"Laboratories for the 21st Century" Case Study of NIH Building 50, by Environmental Protection Agency and Department of Energy . . . . . . . . . . . . . . . 2

Deposition of Jeremy Bardin, March 2, 2005 . . . . . . . . . . 10

Modification No. 93 . . . . . . . . . . . . . . . . . . . . . 21

Summary of Negotiations for Modification No. 93 . . . . . . . . 24

Modification No. 94 . . . . . . . . . . . . . . . . . . . . . 27

Modification No. 95 . . . . . . . . . . . . . . . . . . . . . 29

Summary of Negotiations for Modification No. 95 . . . . . . . . 31

Modification No. 96 . . . . . . . . . . . . . . . . . . . . . 34

Modification No. 97 . . . . . . . . . . . . . . . . . . . . . 37

Modification No. 98 . . . . . . . . . . . . . . . . . . . . . 39

Modification No. 99 . . . . . . . . . . . . . . . . . . . . . 41

Modification No. 100 . . . . . . . . . . . . . . . . . . . . 43

Summary of Negotiations for Modification No. 100 . . . . . . . 45

Modification No. 101 . . . . . . . . . . . . . . . . . . . . 47

Modification No. 102 . . . . . . . . . . . . . . . . . . . . 49

Modification No. 103 . . . . . . . . . . . . . . . . . . . . 51

Summary of Negotiations for Modification No. 103 . . . . . . . 53

Modification No. 104 . . . . . . . . . . . . . . . . . . . . 56

Summary of Negotiations for Modification No. 104 . . . . . . . 58

Modification No. 105 . . . . . . . . . . . . . . . . . . . . 61

Modification No. 107 . . . . . . . . . . . . . . . . . . . . 63

Summary of Negotiations for Modification No. 107 . . . . . . . 65

Modification No. 108 . . . . . . . . . . . . . . . . . . . . 67

Summary of Negotiations for Modification No. 108 . . . . . . 69

Modification No. 109 . . . . . . . . . . . . . . . . . . . . 71

Modification No. 110 . . . . . . . . . . . . . . . . . . . . 73

Modification No. 111 . . . . . . . . . . . . . . . . . . . . 75

Modification No. 112 . . . . . . . . . . . . . . . . . . . . 77

Summary of Negotiations for Modification No. 112 . . . . . . 79

Modification No. 113 . . . . . . . . . . . . . . . . . . . . 83

Modification No. 114 . . . . . . . . . . . . . . . . . . . . 85

Modification No. 115 . . . . . . . . . . . . . . . . . . . . 87

Modification No. 116 . . . . . . . . . . . . . . . . . . . . 89

Modification No. 117 . . . . . . . . . . . . . . . . . . . . 91

Modification No. 119 . . . . . . . . . . . . . . . . . . . . 93

Modification No. 120 . . . . . . . . . . . . . . . . . . . . 95

Modification No. 121 . . . . . . . . . . . . . . . . . . . . 97

Modification No. 122 . . . . . . . . . . . . . . . . . . . . 99

Modification No. 123 . . . . . . . . . . . . . . . . . . . 101

Summary of Negotiations for Modification No. 123 . . . . . 103

Modification No. 124 . . . . . . . . . . . . . . . . . . . 107

Modification No. 125 . . . . . . . . . . . . . . . . . . . 109

Modification No. 126 . . . . . . . . . . . . . . . . . . . 111

Summary of Negotiations for Modification No. 126 . . . . . 113

Modification No. 127 . . . . . . . . . . . . . . . . . . . 116

Modification No. 128 . . . . . . . . . . . . . . . . . . . 118

Modification No. 129 . . . . . . . . . . . . . . . . . . . 120

Modification No. 130 . . . . . . . . . . . . . . . . . . . . 122

Summary of Negotiations for Modification No. 130 . . . . . . 124

Modification No. 132 . . . . . . . . . . . . . . . . . . . . 128

Summary of Negotiations for Modification No. 132 . . . . . . 130

Modification No. 133 . . . . . . . . . . . . . . . . . . . . 132

Summary of Negotiations for Modification No. 133 . . . . . . 134

Modification No. 135 . . . . . . . . . . . . . . . . . . . . 138

Summary of Negotiations for Modification No. 135 . . . . . . 140

Modification No. 136 . . . . . . . . . . . . . . . . . . . . 144

Summary of Negotiations for Modification No. 136 . . . . . . 146

Modification No. 137 . . . . . . . . . . . . . . . . . . . . 148

Modification No. 138 . . . . . . . . . . . . . . . . . . . . 150

Summary of Negotiations for Modification No. 138 . . . . . . 152

Modification No. 139 . . . . . . . . . . . . . . . . . . . . 156

Modification No. 140 . . . . . . . . . . . . . . . . . . . . 158

Summary of Negotiations for Modification No. 140 . . . . . . 160

Expert Report of Patrick W. Brannon, P.E., September 9, 2004 (excerpts) . . . . . . . . . . . . . . . 163

July 31, 2001 letter from Bell to NIH contracting officer . . . . . . . . . . . . . . . . . . . . . . . . . 169

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BELL BCI COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1613C |
| | ) | (Judge Wolski) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S MOTION TO DISMISS COUNT VI, AND FOR PARTIAL SUMMARY JUDGMENT REGARDING ACCORD AND SATISFACTION

Pursuant to Rules 12(b)(1) and 56(b) and (h)(1) of the Court's Rules, defendant, the United States, respectfully requests the Court to (i) dismiss count VI of the complaint for lack of subject matter jurisdiction and (ii) rule that accord and satisfaction bars plaintiff, Bell BCI Company, from recovering damages attributable to contract changes that the parties incorporated into a series of bilateral contract modifications, through and including bilateral Modification No. 140, executed on March 12, 2001. The defense of accord and satisfaction reduces or eliminates Bell's ability to recover under counts I through V, depending upon the evidence presented at trial, but it does not dispose of any count as a matter of law.

In support of this motion, we rely upon the complaint, the accompanying proposed findings of uncontroverted fact and appendix, and this brief.

STATEMENT OF THE CASE AND SUMMARY OF MATERIAL FACTS

We respectfully presume the Court's familiarity with the complaint and our proposed findings of fact. This is, in large measure, a delay and disruption case. Bell seeks damages arising

from its contract to construct National Institutes of Health ("NIH") Building 50, a laboratory research building located at the NIH campus in Bethesda, Maryland. Bell seeks to recover for, among other things, the alleged "cumulative impact" of changes to the contract work. Compl. ¶¶ 68-70; cf. Jackson Constr. Co. v. United States, 62 Fed. Cl. 84, 103-04 (204).

Bell requests this relief, notwithstanding that Bell and NIH agreed upon Bell's compensation for the bulk of these changes in a series of 44 bilateral contract modifications executed between October 2000 and April 2001.[1] These modifications increased the net contract price by more than $3.5 million. Compare Def. App. 21, box 14 with Def. App. 158, box 14. In them, Bell not only reserved no rights, but also "release[d] the Government from any and all liability under this Contract for further equitable adjustment attributable to [each] Modification." See Def. PFF ¶¶ 11, 58. Only the first of these modifications, No. 93, included a time extension. In a final decision denying Bell's certified Contract Disputes Act claim, the contracting officer asserted a claim for liquidated damages for late completion, and other damages. See Compl. ¶ 75; 41 U.S.C. § 605(a).

In summary, Building 50 was originally designed as a five-story structure with a full and functional basement. NIH awarded the contract to Bell in March 1998 and issued the notice

---

[1] The highest-numbered modification at issue, number 140, was signed on March 9 and 12, 2001. However, modification 139 and others were signed later, on April 3 and 5, 2001.

to proceed on April 1, 1998, making June 29, 2000 the original completion date under the contract. The original fixed price was $63,663,745. Compl. ¶¶ 10-11. In early 1999, as construction proceeded, NIH and Bell jointly developed a plan to add an additional floor to Building 50, specifically, a new fourth floor (rather than a new top floor). Bell's initial proposal for the new floor reflected a price estimate of approximately $9.9 million. The parties' price negotiations concerning the new fourth floor proceeded in three phases, the last of which concluded in the fall of 2000. See id. ¶¶ 24-50.

On October 2, 2000, the parties signed modification 93, which changed the completion date to April 30, 2001 (an extension of approximately 200 days from the date then in place) and increased the total contract price to $81,326,544. Def. PFF ¶ 9. Modification 93 also replaced the contract's standard liquidated damages provision with a phased occupancy schedule, reflecting 14 individual substantial completion milestones, and liquidated damages of $266 for each calendar day of delay to each milestone. See id.; Compl. ¶ 51.

Modification 93 states that the price increase constitutes a "full and equitable adjustment for the remaining direct and indirect costs of the Floor 4 Fit-Out (EWO [extra work order] 240-R1) and full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000." Def. PFF ¶ 10. The

agreement further "incorporate[s] the time impact of any disputed changes issued on or before August 31, 2000." Id. The Government's summary of negotiations confirms that the parties added $700,000 to modification 93 to compensate Bell for any "delay claims related to the deferred design Bulletins and all Government changes transmitted to the Contractor on or before August 31, 2000." Def. App. 25.

Finally, modification 93 includes an express release.

> The modification agreed to herein is a fair and equitable adjustment for the Contractor's direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

Def. PFF ¶ 11. The next 43 modifications signed by the parties, through April 5, 2001, also contain this clause. Id. ¶ 57.

During that approximately six-month period - as the scheduled completion date approached, and then passed - the parties resolved dozens of individual contract changes in essentially the same manner, in bilateral modifications 94-140. None of these agreed modifications contained any reservation of rights, none included a time extension, and all of them recited the release language above. Only on July 31, 2001, as liquidated damages continued to accrue, did Bell write to NIH seeking retroactively to reserve rights in the bilateral modifications covering changes since September 1, 2000. Def. App. 169.

Jeremy Bardin, Bell's project manager for Building 50, explained Bell's belated request in an RCFC 30(b)(6) deposition.

> I think [in 2001] this became apparent to me, at least, that NIH was reserving their right . . . when I came to them and said[,] wait a minute, why are you adding this language to your proposal saying that . . . you don't want to talk about our impacts and our acceleration, but you want to reserve your right [to] liquidated damages and such[?] . . . [T]hey represented to me at that time . . . that we somehow had waived our rights to indirect cost[s] and whatnot, and it was never in my mind, never the intent that we ever waived our rights.

Def. App. 20 (Bardin Dep. 39). As demonstrated below, however, Bell's subjective "intent" concerning the 44 bilateral modifications at issue does not control.

Bell now seeks, among other things, damages that it attributes to the cumulative impact of the Government's contract changes. Bell's testifying expert, Patrick W. Brannon, opined in his report, dated September 9, 2004, that "the labor productivity losses incurred [by] BELL on this project are <u>fully</u> recoverable and have not been released or compensated for . . . ." Def. App. 167 (emphasis added). He calculated "loss of efficiency costs" for the entire project of $2,058,546. Def. App. 168.

## <u>ARGUMENT</u>

### I. <u>Legal Standards</u>

Defendant is entitled to dismissal "when the facts asserted by the claimant do not entitle [it] to a legal remedy . . . accept[ing] all well-pleaded factual allegations as true and

draw[ing] all reasonable inferences in the claimant's favor." Lindsay v. United States, 295 F.3d 1252, 1257 (Fed. Cir. 2002); accord Conley v. Gibson, 355 U.S. 41, 45-46 (1957).

Summary judgment, too, is "designed 'to ensure the just, speedy and inexpensive determination of every action,'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1), and is granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." RCFC 56(c). Pursuant to this familiar standard, a factual issue is "genuine" only if the Court could find for the party opposing summary judgment and "material" only if it could affect the judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The movant need not "produce evidence" of the absence of factual disputes, but need only "point[] out" that the record does not support the other party's case. Sweats Fashions, Inc. v. Pannill Knitting Co., 833 F.2d 1560, 1563 (Fed. Cir. 1987) (quoting Celotex, 477 U.S. at 325).

## II. The Court Lacks Subject Matter Jurisdiction To Adjudicate Bell's Promissory Estoppel Count

Count VI of the complaint alleges that "[p]ursuant to the doctrine of promissory estoppel, NIH is bound by its promises and is liable to BELL for damages . . . plus a 245 calendar day extension of time . . . ." Compl. ¶ 96. The Court should dismiss count VI because the Tucker Act, 28 U.S.C. § 1491, does not confer jurisdiction to entertain claims based upon promissory estoppel, which is a species of contract implied in law. La

Mirage, Inc. v. United States, 44 Fed. Cl. 192, 200 (1999); Pacific Gas & Elec. Co. v. United States, 3 Cl. Ct. 329, 340 (1983), aff'd, 738 F.2d 452 (Fed. Cir. 1984) (table); see Hercules Inc. v. United States, 516 U.S. 417, 423 (1996).

Nor may Bell belatedly seek to recast count VI as an equitable estoppel claim, for at least two reasons. First, equitable estoppel cannot be invoked as a "sword," as Bell would need to do here, to create a cause of action that would not otherwise exist. Northrop Grumman Corp. v. United States, 42 Fed. Cl. 1, 9 (1998). Equally important, even when the doctrine is properly invoked, "the Government may not be estopped on the same terms as any other litigant." Heckler v. Community Health Servs., 467 U.S. 51, 60 (1984). Plaintiff must allege and prove "affirmative misconduct." Rumsfeld v. United Technols. Corp., 315 F.3d 1361, 1377 (Fed. Cir. 2003) (quoting Zacharin v. United States, 213 F.3d 1366, 1371 (Fed. Cir. 2000)). Bell's complaint alleges no affirmative malfeasance by Government representatives, nor would there be a basis to allege this.

Accordingly, the Court should dismiss count VI without leave to amend.

## III. Accord And Satisfaction Bars Recovery Of Damages Arising From Changes For Which Bell Was Paid Under Bilateral Modifications 93 Through 140

Accord and satisfaction is a "perfect defense" to claims discharged by agreement. Chesapeake & Potomac Tel. Co. of Va. v. United States, 228 Ct. Cl. 101, 654 F.2d 711, 716 (1981). As

this defense is contractual, the elements are the familiar ones of authority to contract, proper subject matter, an objective meeting of the minds, and an exchange of consideration. Mil-Spec Contrs., Inc. v. United States, 835 F.2d 865, 867 (Fed. Cir. 1987); Brock & Blevins Co. v. United States, 170 Ct. Cl. 52, 59, 343 F.2d 951, 955 (1965).

Accord and satisfaction is no more onerous to prove than any other contract claim. Indeed, there is a presumption that "an executed bilateral contract modification that contains no reservation of rights constitutes an accord and satisfaction." Valcon II, Inc. v. United States, 26 Cl. Ct. 393, 397 (1992); accord Seeds & Derham v. United States, 92 Ct. Cl. 97, 110 (1941). An express release of claims is not a necessary element of this defense. Jackson, 62 Fed. Cl. at 92-93; McLain Plumbing & Elec. Serv., Inc. v. United States, 30 Fed. Cl. 70, 79 (1993).

A. Bell Reserved No Rights In Modifications 93-140

As noted, Bell and the NIH contracting officer (whose contracting authority is unquestioned) negotiated and signed a series of bilateral modifications, covering the new fourth floor and later changed work, through the spring of 2001, that contained no reservations of rights. See Def. PFF ¶¶ 9-57. The Government's payment of the prices established by the modifications is enough, standing alone, to establish accord and satisfaction. "If plaintiff[] had intended to leave a claim . . . open, [its] intention to do so should have been made

manifest and explicit . . . ." Cannon Constr. Co. v. United States, 162 Ct. Cl. 94, 319 F.2d 173, 177 (1963). Bell's subjective intent or understanding is, therefore, irrelevant.

B. Bell Also Released All Claims Within The Subject Matter Of Modifications 93-140

Absent any reservation of rights, there is no need to read further. Nonetheless, each of the modifications at issue also contained the release quoted previously:

> The modification agreed to herein is a fair and equitable adjustment for the Contractor's direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

Def. PFF ¶¶ 11, 58.

This comprehensive release differs only slightly in wording, and not at all in meaning, from the following clauses, which courts and boards have held to constitute full and unconditional releases of claims within the subject matter of the agreements:

> The change in price and/or delivery date described above, is considered to be fair and reasonable and has been mutually agreed upon in full and final settlement of all claims arising out of this modification including all claims for delays and disruptions resulting from, caused by, or incident to such modifications or change orders.

Atlantic Dry Dock Corp. v. United States, 773 F. Supp. 335, 336, 338-39 (M.D. Fla. 1991).

> In consideration of the modification agreed to herein as complete equitable adjustment for the Contractor's letter of proposal for adjustment . . ., the Contractor releases the [Government] from any and all liability under this contract for further equitable adjustment attributable to such facts or circumstances giving rise to the proposals for adjustment.

Niko Contrg. Co. v. United States, 39 Fed. Cl. 795, 797 (1997); see also Safeco Credit v. United States, 44 Fed. Cl. 406, 419-20 (1999); Fru-Con Constr. Co., ASBCA No. 53,544, 2005 WL 874471 (April 14, 2005) (similar clauses in all). We could cite innumerable similar examples.

Bell's allegations regarding its intent cannot introduce ambiguity into the unambiguous terms of these 44 bilateral modifications. See Parry & Wallis, Inc. v. United States, 192 Ct. Cl. 310, 427 F.2d 722, 725 (1970). Because Bell, most importantly, reserved no rights and, on top of this, unambiguously released its claims, the agreed modifications, through and including number 140, plainly extinguish the Government's liability for claims arising from the changed work addressed by those modifications.

C. Bell Cannot Pursue Damages Attributed To The Changes Covered By Modifications 93-140

"Cumulative impact claims are fact-intensive and require the contractor to substantiate its claims that its work was delayed or was performed in an inefficient, unproductive, or more costly manner as a result of the individual changes to the Contract." Jackson, 62 Fed. Cl. at 103-04. Changed work for which the

contractor has already agreed to a price adjustment, without reserving a cumulative impact claim, cannot form the basis for recovery. Id.; Mayfair Constr. Co., NASA BCA No. 578-12, 80-1 BCA ¶ 14,440.

Despite this, as noted, Bell's expert witness bases his damages analysis upon the premise "that all costs associated with BELL's reduced productivity and other indirect costs incurred on the project as a result of the cumulative impact of the numerous Government changes . . . are recoverable." Def. App. 166. Bell and its expert are mistaken. At trial, Bell must segregate and exclude from its damages calculation all costs attributable to the changes for which the Government has already paid more than $3.5 million under modifications 93-140.

The 44 modifications themselves identify, by change order and extra work order ("EWO") number, the specific changes for which the parties agreed upon prices. E.g., Def. App. 52. Even assuming that issues of fact might arise as to whether any particular work, on a particular day, should be attributed to a particular change, questions of that kind can be reserved for trial. We simply request the Court to rule, as a matter of law, that Bell is not entitled to additional compensation for any of the changes covered by modifications 93-140.

Any factual controversies concerning the scope of the claims resolved by the 44 modifications will, in any event, necessarily be limited and well defined. Modification 93, executed in

October 2000, provided a "full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000." Def. PFF ¶ 10 (emphasis added). At a minimum, therefore, Bell cannot recover damages attributable to change orders predating September 1, 2000. This includes essentially all details of the new fourth floor. See Def. App. 16-17 (Bardin Dep. 22-29) (describing process of pricing the fourth floor fit-out, beginning in September 1999). If the parties disagree materially as to the dates upon which Bell received any particular changes, the Court can decide the dates at trial.

The specific changes covered by the bilateral modifications after 93, through number 140, are detailed in each agreement, in section 1 of the negotiated terms. It would serve little or no purpose to discuss here the dozens of changes negotiated by the parties. Should these details be of interest to the Court, we have summarized most of the pertinent changes in our proposed findings of fact and included in our appendix the contracting officer's negotiation summaries for the larger modifications. The matching of particular work, or costs, with particular changes incorporated into the bilateral modifications could be the subject of trial, if necessary.

Furthermore, the allegations of counts I-V of Bell's complaint do not map to any specific contract changes, or to particular periods of time. Accord and satisfaction as to

particular changes thus does not preclude any of these five counts from proceeding to trial.[2] The Court will fundamentally change and focus the evidence to be adduced at trial, however, by establishing the legal principle that Bell cannot recover for the effects of any of the changed work for which the Government has already paid, pursuant to the 44 bilateral modifications executed between October 2, 2000 and April 5, 2001.

## CONCLUSION

For the reasons given above, we respectfully request the Court to dismiss count VI of the complaint and to rule that the defense of accord and satisfaction precludes Bell from recovering damages attributable to the contract changes addressed by bilateral modifications 93-140.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/
BRYANT G. SNEE
Assistant Director

[2] The counts are: (I) "Review of Contracting Officer's Denial of BELL's REA," Compl. ¶¶ 78-80; (II) "Review of Contracting Officer[']s Determination of NIH's Claims Against BELL," id. ¶¶ 81-83; (III) "Breach Of Contract," id. ¶¶ 84-87; (IV) "Cardinal Change," id. ¶¶ 88-89; and (V) "Review of Contracting Officer's Denial of Subcontractors' REAs." Id. ¶¶ 90-92. Bell is certainly unlikely to prove a cardinal change once the changes associated with adding the floor are excluded.

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

OF COUNSEL:
DOUGLAS KORNREICH
KRYSTAL A. JORDAN
Attorneys
Procurement, Fiscal and
Information Law Branch
Office of General Counsel
Department of Health and
Human Services

June 3, 2005

CERTIFICATE OF FILING

I certify that on June 3, 2005, the preceding brief was filed by means of the Court's electronic filing system. Parties and others may access the filing through the Court's system.

s/Kyle Chadwick