IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BELL BCI COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 03-1613C |
| | ) | (Judge Wolski) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S PROPOSED FINDINGS OF UNCONTROVERTED FACT

Pursuant to Rule 56(b) and (h)(1) of the Court's Rules, defendant, the United States, respectfully submits that the following facts supporting its motion for summary judgment regarding accord and satisfaction are uncontroverted.

1. On March 13, 1998, the National Institutes of Health ("NIH"), a component of the Department of Health and Human Services, notified plaintiff, Bell BCI Company, that Bell was the successful bidder for a firm fixed price contract to construct NIH Building 50, a laboratory research building at NIH's Bethesda, Maryland, campus. Compl. ¶¶ 9-10. NIH and Bell executed Contract No. 263-98-C-0102 on March 26, 1998, with a price of $63,663,745.00. Id. ¶ 10; Def. App. 162.

2. Building 50 consists of six stories and a full and functional basement, totaling approximately 300,000 square feet of finished office and laboratory space, accommodating approximately 650 scientists from nine NIH institutes. Compl. ¶ 5; see generally Def. App. 1-9. It was originally designed with five above-ground levels. The original design divided each

of the six occupancy levels into distinct laboratory or research areas, or "neighborhoods," that, depending upon circumstances, could operate independently or share specialty rooms with other neighborhoods. Compl. ¶ 6.

3. NIH issued the notice to proceed on April 1, 1998. Compl. ¶ 11. As the contract provided 821 calendar days to complete the project, the original completion date was June 29, 2000. Id.

4. Beginning in December 1998 and continuing in January 1999, NIH and Bell discussed the possibility of adding a floor to the building, by designing a new fourth floor. On January 14, 1999, Bell submitted a price estimate and initial proposal for the new floor, based upon a design developed jointly by Bell and NIH. Bell projected that it could complete the new floor for approximately $10 million, with a time extension of approximately 90 days. Compl. ¶ 24.

5. NIH decided to proceed with the new floor, and the negotiations between NIH and Bell regarding the changed work proceeded in phases. The first phase addressed the structural steel and concrete work. Id. ¶ 26. On or about February 1, 1999, NIH accepted Bell's offer of a price of $1,579,127, and an extension of 30 calendar days, to complete the structural work. Compl. ¶ 28. On or about April 20, 1999, the parties signed

bilateral Modification No. 5, reflecting those terms. Id. ¶ 29; Def. App. 15 (Bardin Dep. 18-21).

6. The second phase of negotiations involved the "core and shell," or first-stage infrastructure, of the new floor. The parties executed bilateral Modification No. 24 on June 23, 1999, establishing a price of $6,891,118, and an extension of 30 calendar days, for the core and shell work. Compl. ¶ 34; Def. App. 15 (Bardin Dep. 18-21).

7. The third and final phase of negotiations involved certain "fit-out," or detail, work that NIH wanted Bell to perform. Compl. ¶ 36. Bell submitted a proposal for the fit-out work in February 2000, but the Government rejected that proposal in April 2000 and issued a unilateral modification pending further negotiations. See Compl. ¶¶ 41-42.

8. Negotiations concerning the fit-out, and certain changes and enhancements that NIH had made to the fourth floor design, continued through August 2000. In August 2000, as part of the negotiations regarding the fourth floor, Bell submitted to NIH a time impact analysis that, according to Bell, incorporated all Government changes that Bell alleged were impacting its progress. See Compl. ¶ 44.

9. The final phase of negotiations concerning the fourth floor, and related issues, culminated in bilateral Modification No. 93, executed on October 2, 2000. Def. App. 21-26. The

parties agreed in modification 93 to increase the contract price by $2,296,963, to $81,326,544, and to establish a project completion date of April 30, 2001, an extension of almost 200 calendar days. The modification also, among other things, provided for the building to be completed and occupied in phases, and established a series of 14 substantial completion milestones. In accordance with this phased schedule, the liquidated damages of $3,721 per calendar day of delay under the contract were, in effect, divided across the 14 milestones. Bell was thus subject to liquidated damages of $266 for each day it was late in completing any separate milestone. Def. App. 22.

10. Modification No. 93 states that the increase in price constitutes a "full and equitable adjustment for the remaining direct and indirect costs of the Floor 4 Fit-Out (EWO [extra work order] 240-R1) and full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000." Def. App. 22. It further provides, "This agreement does not in any way affect entitlement to the direct cost of performance of any disputed changes. It does, however, incorporate the time impact of any disputed changes issued on or before August 31, 2000 [in the amount of $686,459]." Def. App. 23.

11. The final paragraph of modification 93 states:

> The modification agreed to herein is a fair and equitable adjustment for the Contractor's

> direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

Id.

12. The Government's summary of negotiations for modification 93 states that NIH paid Bell $700,000 in the modification for "delay claims related to the deferred design Bulletins and all Government changes transmitted to the Contractor on or before August 31, 2000." Def. App. 25 (§ L).

13. As Bell acknowledged in a letter dated July 31, 2001, Def. App. 164, Bell continued to negotiate and sign contract modifications as "full and equitable adjustments" with no time extensions, and no language reserving any claims or rights, through and including bilateral Modification No. 140, executed on April 5, 2001. Def. App. 27-162. (In its July 31, 2001 correspondence, Bell attempted to assert reservations of rights retroactively, for modifications that Bell had previously signed, addressing changes initiated after September 1, 2000. Def. App. 169. As of the date of that letter, Bell had missed all of the milestones established by modification 93. Def. App. 22.)

14. On October 2, 2000, Bell and the NIH contracting officer signed bilateral Modification No. 94, which addressed

certain laboratory casework and decreased the contract price by $671, with no time extension. Def. App. 27.

15. Also on October 2, 2000, Bell and the NIH contracting officer signed bilateral Modification No. 95, which concerned certain work in first floor conference rooms and increased the contract price by $86,708, with no time extension. Def. App. 29.

16. On December 8 and 14, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 96, which concerned automatic faucets and flushers and increased the contract price by $20,550, with no time extension. Def. App. 34.

17. On November 3 and 9, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 97, which concerned a revised laboratory monitoring system and increased the contract price by $158,948, with no time extension. Def. App. 37.

18. On December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 98, which provided for a stainless steel steam control valve and increased the contract price by $20,022, with no time extension. Def. App. 39.

19. Also on December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 99, which added a lactation room and

increased the contract price by $11,346, with no time extension. Def. App. 41.

20. On December 8 and 14, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 100, which concerned the penthouse acoustical topping slab and increased the contract price by $17,827, with no time extension. Def. App. 43.

21. On November 3 and 9, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 101, which concerned laboratory casework and NMR lighting and decreased the contract price by $14,271, with no time extension. Def. App. 47.

22. Also on November 3 and 9, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 102, which provided for an IMC conduit at the loading dock and did not change the contract price or extend the time. Def. App. 49.

23. Also on November 3 and 9, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 103, which addressed various changes and increased the contract price by $28,090, with no time extension. Def. App. 51.

24. Also on November 3 and 9, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No.

104, which concerned various changes and increased the contract price by $11,327, with no time extension. Def. App. 56.

25. On December 4 and 11, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 105, which provided for a metal raceway in room B526 and increased the contract price by $1,487, with no time extension. Def. App. 61.

26. On December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 107, which provided for an aluminum platform over the NMR pit and increased the contract price by $75,500, with no time extension. Def. App. 63.

27. On March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 108, which provided for additional convenience outlets and increased the contract price by $49,660, with no time extension. Def. App. 67.

28. On December 8 and 14, 2000, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 109, which provided for relocating the bus stop and decreased the contract price by $1,862, with no time extension. Def. App. 71.

29. On March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 110, which addressed various changes and decreased the contract price by $2,591, with no time extension. Def. App. 73.

30. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 111, which addressed various changes and decreased the contract price by $5,430, with no time extension. Def. App. 75.

31. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 112, which addressed various changes and increased the contract price by $15,448, with no time extension. Def. App. 77.

32. On December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 113, which concerned an in-floor conduit trench in the basement and increased the contract price by $920, with no time extension. Def. App. 83.

33. Also on December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 114, which provided for painting fire damper access doors red and increased the contract price by $8,319, with no time extension. Def. App. 85.

34. Also on December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 115, which addressed ductwork and increased the contract price by $824, with no time extension. Def. App. 87.

35. Also on December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 116, which addressed the telephone wiring and increased the contract price by $5,324, with no time extension. Def. App. 89.

36. On December 29, 2000 and an unknown date (probably January 5, 2001), respectively, Bell and the NIH contracting officer signed bilateral Modification No. 117, which addressed numbering changes to air handling units and increased the contract price by $1,100, with no time extension. Def. App. 91.

37. On December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 119, which concerned an emergency shower and increased the contract price by $1,705, with no time extension. Def. App. 93.

38. Also on December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 120, which addressed relocation of an "AF-8" and increased the contract price by $370, with no time extension. Def. App. 95.

40. Also on December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 121, which concerned locker room

B213/215 and increased the contract price by $887, with no time extension. Def. App. 97.

41. Also on December 29, 2000 and January 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 122, which concerned shelving and increased the contract price by $1,968, with no time extension. Def. App. 99.

42. On March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 123, which concerned various changes and increased the contract price by $16,740, with no time extension. Def. App. 101

43. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 124, which addressed various changes and increased the contract price by $3,564, with no time extension. Def. App. 107.

44. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 125, which concerned removal of a strainer and increased the contract price by $7,693, with no time extension. Def. App. 109.

45. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 126, which addressed various changes, including adding card readers on the fifth floor, and increased the contract price by $340,371, with no time extension. Def. App. 111.

46. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 127, which addressed various changes and increased the contract price by $832, with no time extension. Def. App. 116.

47. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 128, which provided for an additional tackboard and increased the contract price by $1,447, with no time extension. Def. App. 118.

48. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 129, which addressed various changes and did not increase the contract price or extend the time. Def. App. 120.

49. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 130, which addressed various changes and increased the contract price by $25,071, with no time extension. Def. App. 122.

50. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 132, which concerned first floor casework and other changes and increased the contract price by $145,942, with no time extension. Def. App. 128.

51. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No.

133, which addressed various changes and increased the contract price by $45,960, with no time extension. Def. App. 132.

52. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 135, which addressed various changes and increased the contract price by $14,929, with no time extension. Def. App. 138.

53. Also on March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 136, which concerned equipment in a fish room and increased the contract price by $67,709, with no time extension. Def. App. 144.

54. On April 3 and 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 137, which addressed various changes and increased the contract price by $4,745, with no time extension. Def. App. 148.

55. Also on April 3 and 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 138, which addressed various changes and increased the contract price by $30,282, with no time extension. Def. App. 150.

56. Also on April 3 and 5, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 139, which addressed various changes and increased the contract price by $2,112, with no time extension. Def. App. 156.

57. On March 9 and 12, 2001, respectively, Bell and the NIH contracting officer signed bilateral Modification No. 140, which provided for two additional granite countertops and two additional darkrooms and increased the contract price by $19,348, with no time extension. Def. App. 158.

58. The language quoted in paragraph 11 above is the final paragraph of each and every bilateral modification described in paragraphs 14-57 above. (See citations above.)

59. Bell contemporaneously transmitted to NIH the letter dated July 31, 2001 that is reproduced at Def. App. 169-70.

60. NIH made payment to Bell of the prices agreed upon in all modifications cited above. Def. App. 158, box 14, 162-63.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/
BRYANT G. SNEE
Assistant Director

OF COUNSEL:

DOUGLAS KORNREICH
KRYSTAL A. JORDAN
Attorneys
Procurement, Fiscal and
Information Law Branch
Office of General Counsel
Department of Health and
Human Services

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562
Fax: (202) 305-7644

Attorneys for Defendant

June 3, 2005

CERTIFICATE OF FILING

I certify that on June 3, 2005, the preceding document was filed by means of the Court's electronic filing system. Parties and others may access the filing through the Court's system.

s/Kyle Chadwick