# JUSTIFICATION FOR OTHER THAN FULL AND OPEN COMPETITION (FAR 6.3, HHSAR 306.3)

Part I. Background Information and Description of Acquisition:

1. Program Office

   NIH/OD/DES/DCAB

2. Project – Contract Number

   The Louis Stokes Laboratories / Building 50
   Bid Package No. 2
   Contract No. 263-98-C-0102
   Floor 6 Addition

   Project Officer:

   Frank M. Kutlak, R.A.
   National Institutes of Health
   Design and Construction Branch
   Division of Engineering Services
   Building 13, Room 2S75
   9000 Rockville Pike
   Bethesda, MD 20892
   (301) 402-3691

   Contracting Officer:

   Barbara Taylor
   National Institutes of Health
   Building 13, Room G-800
   9000 Rockville Pike
   Bethesda, MD 20892
   (301) 435-4333

3. Purpose/Brief History

   The NIH's mission is to uncover new knowledge through biomedical research that will lead to better health for everyone. New, state-of-the-art laboratory facilities play a vital role in the NIH's mission by:

   - Relieving over-crowding in existing laboratories and providing space for additional researchers.
   - Improving researchers' efficiency by providing highly-functional space and technologically advanced equipment.
   - Accommodating rapid change in science, programs, and personnel with flexible space that can be retrofitted quickly and inexpensively.
   - Attracting world-class research talent to the NIH.

NIH-9-17356

   The NIH has a chronic need for new, state-of-the-art laboratory space. The Louis Stokes Laboratories / Building 50 project will provide 259,510 SF of new, state-of-the-art laboratory space. It will replace five older, outdated facilities (Buildings 2, 3, 6, 6A, and 7) that will subsequently be retrofitted as laboratory and office space. Building 50 will accommodate structural and cell biology research in allergy and infectious diseases; the human genome; the heart, lung, and blood; diabetes, digestive and kidney diseases; and arthritis, musculo-skeletal and skin diseases.

   Building 50 is being constructed in two bid packages. Bid Package No. 1 included relocation of site utilities, excavation, and foundations. It was completed in April 1998. Bid Package No. 2

includes all remaining construction work. The Bid Package No. 2 contract was awarded to the Bell Company in April 1998. Bell will construct the project in six "phases" through the building from bottom to top:

- Structural concrete frame.
- Outside enclosure.
- Interstitial decking.
- Mechanical, electrical and plumbing (MEP) rough-in.
- Finishes.
- Commissioning.

Bell is currently placing the Floor 5 concrete deck and will begin placing concrete columns to Floor 6 by February 12, 1999. Bell is also working on the outside enclosure of Floor 1 and installing interstitial decking and MEP rough-ins in the Basement. The contract completion date is June 2000.

The subject of this JOFOC is the addition of a floor (Floor 6) to the Bid Package No. 2 contract. The additional floor will respond to the NIH's chronic need for new, state-of-the-art laboratory space by providing an additional 36,130 gross SF (23,700 net SF) of space. It will increase the building area by 15% (to 292,200 gross SF and 174,350 net SF) and will provide 42 lab modules and support space, enough for over 100 additional researchers. It will do so at a substantially lower cost and in much less time than by conventional methods. The addition of another floor to Building 50 via a JOFOC is extremely effective because it utilizes the existing planning, decisions, approvals and resources already in place. The previous programming, architectural design, engineering, NIH reviews and approvals will be reissued and the construction supervision, construction general contractor and dozens of sub contractors already under contract will simply provide more of the services they are already performing.

There is a real need for new, state-of-the-art laboratory space at the NIH. This was demonstrated when the Director of NIH discussed this additional floor with the Institute Directors; the NIH Space Board immediately received requests from the Institutes for over five times the amount of square footage Floor 6 will provide.

The chronology of events leading to this JOFOC was as follows:

- In mid December 1998 the Building 50 Project Management team verified that there was a significant high contingency in the project budget that would eventually become a project surplus. At that time the project officer, aware of the present need for additional laboratory space, conceived a proposal to add an additional floor to the building.

- DES/DCAB management authorized a feasibility study and Government estimate by the design team in late December.

- The design team issued their feasibility study and Government estimate on January 12, 1999, concluding that the proposal was technically feasible.

- After evaluation of the Government estimate and project budget, the Building 50 Project Management team developed and recommended an option to provide the additional floor as a fairly complete shell by deleting the scientific cabinetry and systems furniture, interior finishes and the equipment storage and support rooms. When coupled with the transfer of some costs to the Institutes, the additional floor could be added while still maintaining the DES-recommended base project contingency level.

- This proposal was submitted to Mr. Steve Ficca, Director, Office of Research Services, on or about January 15, 1999. He approved it and forwarded it to Dr. Michael Gottesman, Deputy

Director for Intramural Research, and Dr. Harold Varmus, NIH Director, on January 19, 1999. Dr. Varmus approved the proposal on January 22, 1999

- The design team began preparation of contract documents on January 25, 1999. After an intensive effort, the structural bulletin is complete and ready for issue to the construction contractor. The statement of work for the balance of the work will be complete and ready for issue to the contractor in early March.

The Government's independent cost estimate for the additional floor (less selected finishes) is $9,200,000. The current project budget surplus is $15,600,000. There are adequate funds available to apply to the proposed acquisition and still have $6,400,000 remaining for contingency. The project has not encountered any significant difficulties to date. $6,400,000 is considered an adequate contingency fund at this stage of completion.

The Government's independent schedule estimate is three months, resulting in an extension to the contract completion date from June 2000 to September 2000 and an extension to occupancy completion from September 2000 to December 2000.

The Bid Package No. 1 contract no. was 263-97-C-0222. The start date was July 1997 and the award amount was $3,174,020. The Bid Package No. 2 contract no. is 263-98-C-0102. The start date was April 1998 and the award amount was $63,663,745. Both contracts were awarded competitively.

The Government is not able to perform final design at this time because it has not decided which Institutes will occupy the additional floor. Therefore, finishes will be provided at a later date. Future plans will include a request for a sole source JOFOC for construction of the finishes.

Part II. Facts and Reasons to Justify Other than Full and Open Competition:

1. Statutory Authority

41 U. S. C. 253 (c) (1); FAR 6.302-2

2. Reasons for Selecting Cited Authority

Pursuant to FAR 6.302-2, a sole source award without notification to other potential sources is justified due to unusual and compelling urgency for the following reasons:

a. The Floor 6 addition presents a rare opportunity for the NIH to satisfy its chronic need for new, state-of-the-art laboratory space at a bargain price. The estimated cost of the Floor 6 addition equates to $462 per net SF. Constructing equivalent space conventionally would cost a minimum of $527 per net SF. The NIH would suffer an opportunity cost of at least $1,200,000 if it did not add Floor 6. Moreover, the Floor 6 addition will be completed much more quickly than by conventional means. The Government estimates a three-month time extension to the Bid Package No 2 Construction contract to add this additional floor. Designing, procuring, and constructing 36,130 SF of laboratory space conventionally would take at least 36 months, and would require additional time and costs by NIH staff. No other design and construction vehicle could provide this additional space to the NIH in this little time at this or any cost. However, the NIH can benefit from this opportunity only if it acts immediately.

b. As indicated above, Bell is constructing the project in six "phases" from bottom to top. Bell is currently nearing completion of the first phase, the structural concrete frame. The first Floor 5 concrete deck placement was completed today. Bell will begin placing concrete columns to Floor 6 by February 12, 1999. Those columns (and all subsequent concrete work) are different from the columns that Bell would place if there were no Floor 6, and they are on the

"critical path" of Bell's approved CPM schedule. If the Government elected to add Floor 6 by a competitive procurement process, it would have to suspend Bell's work immediately until completion of the competitive procurement process. Assuming a six-month procurement process, the cost to the Government for the suspension of Bell's work would be approximately (180days x $7,000=) $1,260,000. Merely suspending Bell's work for the 45 days necessary for a CBD announcement would cause a financial injury to the Government of (45days x $7,000=) $315,000. Furthermore, the project completion date would be delayed by at least these same periods (180 days and 45 days, respectively), in addition to the Government estimated 90 days for performing the work.

c. If the Government elected to pursue a competitive procurement process, it is highly unlikely that another firm could beat Bell's price. Building 50 employs a modular design wherein each floor is nearly identical to the others. In fact, the Government has instructed the Architect to produce drawings for Floor 6 by merely duplicating those of another floor. This economy in design will carry forward into construction. For example, Bell and its subcontractors will be able to produce shop drawings by duplicating those of other floors. Bell's field labor will also enjoy the learning curve benefits of yet another repetition. Finally, Bell and it's subcontractors already have all of their support functions in place. Another contractor, however, will not enjoy these advantages. Each shop drawing will have to be produced from scratch, and there will be no learning curve benefits since the contractor would build only one floor. Moreover, the contractor would have to assemble dozens of subcontractors and mobilize, incurring general conditions costs (including the substantial cost of a tower crane and man and material hoists) that would duplicate costs already incurred by Bell. Furthermore, the building 50 site is a tight constrained site with minimal support areas. There is no space available on the site for another contractor to locate offices, storage and support facilities. Sharing the construction site would also create significant security and access issues between dual contractors.

d. In the unlikely event that a firm other than Bell was awarded the work, then the Government would face substantial risk of costly claims and delays in addition to the $1,260,000 and 180 day cost noted above. As indicated above, Bell is constructing the project in six "phases" from bottom to top. Floor 6 is a horizontal "slice" inserted through and integral to the building. If another firm were responsible for the Floor 6 slice, it would have insert itself into each one of Bell's phases. Bell would suffer lengthy interruptions to its work while it waited for the other firm to complete its Floor 6 slice, and the other firm would suffer even longer delays waiting for its opportunity to work on its slice. In addition, there would be a multitude of opportunities for each firm to interfere with the other at the interface between the slices. Finally, if a firm other than Bell were awarded the work, then the Government would run the risk of having products of different manufacturers and work of different contractors on Floor 6 from the rest of the building. This would result in interface and compatibility problems for the many systems than span across the floors (laboratory alarm, access control, HVAC, Building Automation System, piping, electrical, etc.). It would also present maintenance problems for the life of the building and interfere with the modular design of the laboratories.

In summary, adding Floor 6 would provide chronically needed state-of-the-art laboratory space at savings of $1,200,000 and 33 months over conventional methods, but it requires immediate action. Dollar and time savings will diminish at the rate of $7,000 per day and one day of delay to project completion for each day of delay in completing the procurement. If the Government were to pursue competitive procurement, Bell would probably be the successful offeror; however, the cost to the Government of the procurement process ($1,260,000 and 180 days) would exceed the benefits of adding Floor 6. In the unlikely event that another contractor was successful, the added risk of costly claims and delays and commissioning and maintenance problems would far exceed the benefits of adding Floor 6. Since the need for the additional laboratory space is already known, failure to add the requirement for Floor 6 immediately would cause financial injury to the Government as outlined above.

3. Efforts Made to Solicit From Other Sources

No efforts have been made to solicit from other sources for the reasons stated above.

4. Description of Market Research

DES/DCAB authorized a feasibility study and Government estimate by the design team in late December 1998. The design team completed its study and Government estimate on January 12, 1999, concluding that the proposal was technically and financially feasible. The numbers and dollars specified in Part II, item 2 were derived from the project Construction Quality Manager's analysis of the Floor 6 proposal. The opportunity cost of $1,200,000 for not adding Floor 6 was derived by subtracting the total estimated unit cost (including design and other soft costs) for the Floor 6 addition from the projected total unit cost for the base building. The competitive procurement and CBD announcement delay costs ($1,260,000 and $315,000, respectively) were derived by multiplying the days of delay by the sum of the contractor's extended overhead plus the Government's liquidated damages. The Government damages were established earlier by summing the Government's daily costs of administering the project.

5. Other Pertinent Facts

None.

6. Actions Taken, or Anticipated, to Avoid, in the Future, Continued Acquisition by Other Than Full and Open Competition

Due to few changes, sound design, construction, and financial management has resulted in a budget surplus larger than deemed necessary for contingency, creating this opportunity to add chronically needed space to the project scope. However, in accordance with good management practices, in future acquisitions of this nature, the use of options will be considered in order to provide the government with unilateral ability to purchase additional services.

Part III. Recommendation, Review, and Approval

This is to certify that to the best of my knowledge and belief, this Justification for Other than Full and Open Competition, submitted in writing, as required by FAR 6.3.03. and the supporting documentation thereto, meets the minimum needs or scheduled requirements of the Agency, and is accurate and complete.

[signature] 2/10/99

Frank Kutlak, R.A., Project Officer — Date

Concur

This is to certify that to the best of my knowledge and belief, this Justification for Other than Full and Open Competition, submitted in writing, as required by FAR 6.3.03. and the supporting documentation thereto, meets the minimum needs or scheduled requirements of the Agency, and is accurate and complete.

Barbara Taylor 2/10/99

Barbara Taylor, Contracting Officer — Date

NIH-9-17360

10605 Concord St., Suite 205 • Kensington, MD 20895 • (301) 962-7700 • FAX (301) 962-7701

# BELL

January 14, 1999

National Institutes of Health
Division of Engineering Services
Design, Construction and Alteration Branch

Attn: Frank Kutlack R.A.

Dear Frank,

We are pleased to be given the opportunity to submit a proposal for the addition of a full service laboratory floor and an associated interstitial floor.

Our proposal is based on H.L. M.'s feasibility study for the vertical expansion of building 50. In addition to a "base price" we have broken out cost associated with the stair pressurization, and added A.H.U.. The base proposal cost includes any mechanical riser upsizing and fan resheaving as indicated on the mechanical section of the report. Included also is the electrical, fire alarm and fire protection upgrades described in the study. We understand that there are no structural upgrades required to facilitate this addition.

Having contacted all subcontractors and vendors associated with this floors addition the Bell company has obtained the best available pricing reflective of today's market place.

For the lump sum of $ 9,831,838.00 we will add all structural work to erect an 18'-4" vertical story with an interstitial space. Included is a fully functional 36,200 ft laboratory space configured after the current 3rd floor layout. The base price sum also includes all time extension cost to extend the current schedule by 92 calendar days (3 months).

<u>ADDITIONAL BREAKOUT COST</u>

a. Stair Pressurization add $ 92,400.00 (Budget)
b. New A.H.U. add $ 224,744.00 (Budget)

Excluded in the proposal are any structural changes, emergency generator enclosure upsizing, balancing contractor, commissioning agent, independent testing agency and monthly utility costs.

Kutlak
DEPOSITION
EXHIBIT
7
PENGAD 800-631-6989

BELL

This proposal is based on keeping the original kit of parts unchanged for Item B (20 ea) and Item C (2 ea). The Bell company would need a notice to proceed by the close of business on Monday January 25, 1999.

We are impressed by the expedient decisions that all team members have displayed. The Bell company is committed to incorporating this addition without missing a beat and we can assure you that this change can only add to the overall success of the project.

Sincerely,

Jerry Romandino
Manager Division

NIH-1-17207

TOTAL P.03

AMENDMENT OF SOLICITAT / MODIFICATION OF CONTRACT | CONTRACT OMB 0990 0115 | Page of Pages 1 of 2

2. AMENDMENT/MOD. NO. Modification No. 005
3. EFFECTIVE DATE Block 16c
4. REQUISITION/PURCHASE REQ. NO.
5. Project No. (If applic.) W.R# HVX30019

6. ISSUED BY CODE
National Institutes of Health
Acquisition Branch C, DSSC, OPM
9000 Rockville Pike, Bldg.13, Rm.G-800
Bethesda, MD 20892

7. ADMINISTERED BY (If other than Item 6) CODE
Contracting Officer: Barbara Taylor
Tel. : (301) 435-4333
FAX: (301) 402-1103

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State, and ZIP Code)
Bell BCI Company
10605 Concord Street, Suite 205
Kensington, MD 20895

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
263-98-C-0102

10B. DATED (SEE ITEM 13)
March 26, 1997

CODE | FACILITY CODE

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12 ACCOUNTING AND APPROPRIATION DATA *(IF REQUIRED)*
9-8330705 O C. 25.41 Increase $1,579,127 W.R.# HVX30019

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

☐ A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

☐ B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b)

x C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.243-4 Changes - Fixed Price (Aug 1987)

☐ D. OTHER (specify type of modification and authority) ________

E. IMPORTANT: Contractor ☐ is not. ☒ is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

PURPOSE: This agreement is to modify the contract and provide equitable adjustment for changed work itemized on the following page of this modification.

CONTRACT TITLE: Consolidated Laboratory Facility - Building 50 Bid Package No. 2

CONTRACT AMOUNT: $65,289,362 (Increase of $1,579,127)

CONTRACT EXPIRATION DATE: July 29, 2000 (30 calendar day time extension)

CONTRACT TYPE: Firm Fixed-Price Construction

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15 A. NAME AND TITLE OF SIGNER (Type or print)
Kevin Halligan Project Manager

16A. NAME AND TITLE OF CONTRACTING OFFICER (TYPE or print)
Barbara Taylor
Contracting Officer

15B. CONTRACTOR/OFFERER
BY [signature]
(Signature of person authorized to sign)

15C. DATE 4/19/99

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE 4/20/99

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

Standard Form 30 (Rev 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243



NIH-9-17387

THE GOVERNMENT AND THE CONTRACTOR MUTUALLY AGREE AS FOLLOWS:

1. Part I, Section C, Paragraph 1 - Statement of Work is hereby modified by adding work identified below by Change Number, Issuing Change Order, description, and associated dollar amount:

| Change | CO | DESCRIPTION | | AMOUNT |
|---|---|---|---|---|
| 013 | 013 | Additional Floor - Structural | | $1,579,127 |
| | | | **Total** | **$1,579,127** |

Any outstanding changes from the above noted Change Orders will be definitized in a later modification.

2. All other terms and conditions of this contract remain unchanged.

3. The modification agreed to herein is a fair and equitable adjustment for the Contractor's direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

*****

# AMENDMENT OF SOLICITATION / MODIFICATION OF CONTRACT

CONTRACT OMB 0990 0115 | Page of Pages 1 of 2

2. AMENDMENT/MOD. NO. Modification No. 024
3. EFFECTIVE DATE Block 16c
4. REQUISITION/ PURCHASE REQ. NO.
5. Project No. (If applic.) W.R# HVX30019

6. ISSUED BY CODE
National Institutes of Health
Acquisition Branch C, DSSC, OPM
9000 Rockville Pike, Bldg.13, Rm.G-800
Bethesda, MD 20892

7. ADMINISTERED BY (If other than Item 6) CODE
Contracting Officer: Barbara Taylor
Tel. : (301) 435-4333
FAX: (301) 402-1103

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State, and ZIP Code)
Bell BCI Company
10605 Concord Street, Suite 205
Kensington, MD 20895

CODE | FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.
263-98-C-0102

10B. DATED (SEE ITEM 13)
March 26, 1997

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12 ACCOUNTING AND APPROPRIATION DATA *(IF REQUIRED)*
9-8330705 O C. 25.41 Increase $6,891,118 W.R.# HVX30019

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

| | |
|---|---|
| | A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A. |
| | B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b) |
| x | C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.243-4 Changes - Fixed Price (Aug 1987) |
| | D. OTHER (specify type of modification and authority) ________ |

E. IMPORTANT: Contractor ☐ is not. [x] is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

PURPOSE: This agreement is to modify the contract and provide equitable adjustment for changed work itemized on the following page of this modification.

CONTRACT TITLE: Consolidated Laboratory Facility - Building 50 Bid Package No. 2

CONTRACT AMOUNT: $72,301,953 (Increase of $6,891,118)

CONTRACT EXPIRATION DATE: August 29, 2000 (30 day time extension)

NIH-9-18991

CONTRACT TYPE: Firm Fixed-Price Construction

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remains unchanged and in full force and effect.

15 A. NAME AND TITLE OF SIGNER (Type or print)
Karl Hartman Project Management

16A. NAME AND TITLE OF CONTRACTING OFFICER (TYPE or print)
Barbara Taylor
Contracting Officer

15B. CONTRACTOR/OFFERER
BY [signature]
(Signature of person authorized to sign)

15C. DATE 6/18/99

16B. UNITED STATES OF AMERICA
BY [signature]
(Signature of Contracting Officer)

16C. DATE 6/23/99

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

Standard Form 30 (Rev 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

THE GOVERNMENT AND THE CONTRACTOR MUTUALLY AGREE AS FOLLOWS:

1. Part I, Section C, Paragraph 1 - Statement of Work is hereby modified by adding work identified below by Change Number, Issuing Change Order, description, and associated dollar amount:

| Change | CO | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 032 | 029 | Additional Floor – Balance (Reference JOFOC Mod. No. 005- Additional Floor structural) | $6,891,118 |
| | | **Total** | **$6,891,118** |

Any outstanding changes from the above noted Change Orders will be definitized in a later modification.

2. All other terms and conditions of this contract remain unchanged.

3. The modification agreed to herein is a fair and equitable adjustment for the Contractor's direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

*****

NIH-9-18992

EXTRA WORK ORDER

# BELL

RECEIVED
FEB 14 2000
CRSS CONSTRUCTORS, INC.

EWO # 240

DATE 2/11/00

JOB # C4-2115

Attn: EJ CC: BTa, FK, File

TO: Barbara Taylor
Acquisition Branch C, DP
Building 13, Room G-800
National Institutes of Health
Bethesda, MD 20892

ACTION: Prepare to negotiate,

CSI 1000 Issue

PROJECT National Institute of Health Building 50

CONTRACT # 263-98-C-0102

The attached breakdown represents the estimated cost for the following proposed revision:

Provide all work associated with Bulltein No. 35 specifications and drawings issued on 9/30/99.

This proposal includes the following RFI clarifications: RFI No.s 871,900,1006 and 1007

A time extension of 90 days was previously negotiated with the government for the added work. This proposal includes the final 30 calander days of extended overhead agreed for the added floor only.

Schedule activities for this scope of work will be identified in a fragnet and will be merged into the CPM with new and existing activities.

As of this date, work identified in this proposal has occured. Metal stud work and in-wall plumbing rough-in has been completed. Additionally, casework shop drawings have been prepared and material orders have been placed for casework and lighting fixtures so not to delay the schedule. As this proposal was given to Bell as an RFP, we ask that we receive a formal notice to proceed or definitive direction on how the government wishes to proceed within 5 work days so we may direct our subcontractors accordingly.

As per the attached breakdown to our contract, we propose an ADD TO our contract.

*** Three Million Four Hundred Eighty One Thousand Seven Hundred Forty Nine And 43/100 Dollars ***

$3,481,749.43

upon acceptance of this proposal

This proposal is valid for 30 days.

Extension of contract time with this extra 30 days.

Very truly yours,

| | | |
|---|---|---|
| | 1. | This proposal does not include any $ for extension or acceleration as long as the change order is received within the indicated time frame. |
| noted above XXXX | 2. | Extension cost is included in this proposal. |
| | 3. | Acceleration cost to maintain project schedule is included in this proposal. |

Jeremy S. Bardin
Project Manager

ACCEPTED

DATE

I. MATERIAL:

| ITEM | QUANTITY | U/M | PER UNIT | TOTAL |
|---|---|---|---|---|
| See ext. sheets | 1 | ls | 5,854.10 | 5,854.10 |
| ext. sheets | 1 | ls | 7,292.68 | 7,292.68 |
| Gas Raceway | 1 | ls | 6,323.94 | 6,323.94 |
| | | | Extension Sheet Attached | |
| | | | *Subtotal (1):* | 19,470.72 |
| | Consumables | 7% | of Sub-Total (1) | 1,362.95 |
| | | | Total for I: | $20,833.67 |

II. EQUIPMENT:

| ITEM | QUANTITY | U/M | PER UNIT | TOTAL |
|---|---|---|---|---|
| Stack Sales | 1 (see quote) | LS | 3150.00 | 3,150.00 |
| Trash Dumpsters | 15 | EA | 322.00 | 4,830.00 |
| | | | Extension Sheet Attached | |
| | | | Total for II: | $7,980.00 |

III. SUBCONTRACTS:

| | AMOUNT |
|---|---|
| AC&S | 29,789.00 |
| Accutrack | 5,420.00 |
| Arbee | 96,984.00 |
| Arbee Attick Stock Adder | 2,683.96 |
| Capital Sprinkler | 900.00 |
| Classic Woodworking | 43,470.00 |
| Clestra Hauserman | 393,031.00 |
| Delta Elevator (rental) | 589.00 |
| ironmental Signs | 8,138.00 |
| eral Express | 664.00 |
| .oors ETC | 75,480.60 |
| Hufcor | 7,990.00 |
| ISEC | 494,375.33 |
| Jordan Scientific | 105,831.00 |
| Manganaro | 253,484.00 |
| Millwork Sub PLUG | 80,000.00 |
| Mountainview Specialties | 3,650.00 |
| NLP | (4,339.00) |
| Photo Lab | 19,716.00 |
| Ridgeway | 985.00 |
| Seimans | 81,028.00 |
| Stromberg | 202,857.00 |
| Sun Control Systems | 4,200.00 |
| WBH | 56,246.00 |
| Young Electric | 964,540.00 |

Total for III: $2,927,712.89

IV. LARGE CONSTRUCTION EQUIPMENT:

| ITEM | DAY/HR/WK | U/M | RATE | TOTAL |
|---|---|---|---|---|
| Welding Machine | 1 | Month | 1521 | 1,521.00 |
| Cutting Outfit | 1 | Month | 80 | 80.00 |
| Butt Fusion Machine | 1 | Month | 980 | 980.00 |
| Scissor Lift | 1 | Month | 2297 | 2,297.00 |

Total for IV: $4,878.00

**V. FIELD LABOR**

| | LABOR RATE | FICA, FUTA, SUTA RATE | HOURS | TOTAL LABOR | TOTAL FICA, FUTA, SUTA | GRAND TOTAL LABOR |
|---|---|---|---|---|---|---|
| Operator Forman | 29.15 | 2.36 | 80.00 | 2,332.00 | 188.80 | 2,520.8 |
| Operator Leadman | | | | | | |
| Operator Journeyman | | | | | | |
| Operator O.T. | | | | | | |
| Ironworker Foreman | 30.27 | 2.22 | 71.64 | 2,168.54 | 159.04 | 2,327.5 |
| Ironworker Leadman | 28.84 | 2.12 | 143.27 | 4,131.91 | 303.73 | 4,435.6 |
| Ironworker Journeyman | 27.76 | 2.02 | 573.11 | 15,909.53 | 1,157.68 | 17,067.2 |
| Ironworker O.T. | | | | | | |
| Pipefitter O.T. | | | | | | |
| Plumber Foreman | 34.67 | 2.66 | 48.39 | 1,677.68 | 128.72 | 1,806.4 |
| Plumber Leadman | 33.17 | 2.56 | 96.77 | 3,209.86 | 247.73 | 3,457.5 |
| Plumber Journeyman | 32.09 | 2.46 | 387.08 | 12,421.40 | 952.22 | 13,373.6 |
| Plumber O.T. | | | | | | |
| Carpenter Foreman | 26.59 | 1.99 | 64.03 | 1,702.56 | 127.42 | 1,829.98 |
| Carpenter Leadman | 25.16 | 1.89 | 128.06 | 3,221.99 | 242.03 | 3,464.02 |
| Carpenter Journeyman | 24.03 | 1.79 | 512.23 | 12,308.89 | 916.89 | 13,225.78 |
| Carpenter O.T. | | | | | | |
| Laborer Leadman | 20.81 | 1.58 | 48.00 | 998.88 | 75.84 | 1,074.72 |
| Laborer Journeyman | 19.63 | 1.48 | 192.00 | 3,768.96 | 284.16 | 4,053.12 |
| Draftsman | 31.15 | 3.85 | | | | |
| | | | Totals: | 63,852.20 | 4,784.27 | 68,636.46 |

INSPECTION: Rate = 35.00 Hours = 120 4,200.00

SCHEDEULING: Rate = 30.00 Hours = 40 1,200.00

Total Labor: 74,036.46
Less: FICA,FUTA, SUTA: 4,784.27
Net Labor: 69,252.20

Hand Tools * of Net Labor: 0.00

Total for V: 69,252.20
*Subtotal (2):* 3,030,656.76

**GENERAL CONDITIONS:** * of Subtotal (2) Total for VI:

**VII. MISCELLANEOUS:**

Insurance: (Builders Risk & Owners Protective) 0.0% of Subtotal (2)
Taxes: (State & Local Sales) 5.0% of I. & II. 1,440.68
Taxes: (State & Local Sales) 5.0% of IV. 243.90

Total for VII: 1,684.58
*Subtotal (3):* 3,032,341.34
Less: Subcontracts: 2,927,712.89
Subtotal (3a): 104,628.45

**VIII. CORPORATE OVERHEAD:** 5.0% Subcontracts 146,385.64
10.0% Subtotal (3A) 10,462.85
: 156,848.49
*Subtotal (4):* 3,189,189.83
Less Subcontracts: 2,927,712.89
Subtotal (4a): 261,476.94

**IX. PROFIT / MARKUP:** 5.0% of Subcontracts 146,385.64
10.0% of Subtotal (4A) 26,147.69
Total for IX: 172,533.34
*Subtotal (5):* 3,361,723.17

ADD: FICA, FUTA, SUTA: 4,784.27
*Subtotal (6):* 3,366,507.43

**X. PERFORMANCE BOND:** 0.38% of Subtotal (6) Total for X: 12,792.00
*Subtotal (7):* 3,379,299.43

**XI. LUMP SUM KIT OF PARTS**

30 Days Extended times daily rate 3,415.00 102,450.00

Subcontractor Extension Costs 0.00

* Included in overhead percentage

Total for XI: 102,450.00

**GRAND TOTAL (ADD)** 3,481,749.43

# AMENDMENT OF SOLICITA1..JN / MODIFICATION OF CONTRACT

1. CONTRACT: OMB 0990 0115 — Page of Pages: 1 of 2

2. AMENDMENT/MOD. NO.: ıdification No. 78
3. EFFECTIVE DATE: Block 16c
4. REQUISITION/ PURCHASE REQ. NO.:
5. Project No. (If applic.): W.R# HVX30019

'ED BY — CODE
ional Institutes of Health
..cquisition Branch C, DSSC, OPM
9000 Rockville Pike, Bldg.13, Rm.G-800
Bethesda, MD 20892

7. ADMINISTERED BY (If other than Item 6) — CODE
Contracting Officer: Barbara Taylor
Tel. : (301) 435-4333
FAX: (301) 402-1103

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State, and ZIP Code)
Bell Company
10605 Concord Street, Suite 205
Kensington, Maryland 20895

9A. AMENDMENT OF SOLICITATION NO.:
9B. DATED (SEE ITEM 11):
10A. MODIFICATION OF CONTRACT/ORDER NO.: 263-98-C-0102
10B. DATED (SEE ITEM 13): March 26, 1998

CODE — FACILITY CODE

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing Items 8 and 15, and returning ________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers. FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12 ACCOUNTING AND APPROPRIATION DATA *(IF REQUIRED)*

| | | | | |
|---|---|---|---|---|
| 0-8324901 (NIDCD) O C. 25.41 | increase | *$496,555* | W.R.# HVX30019 | |
| 0-8334109 (NHLBI) O C. 25.41 | increase | *$462,107* | W.R.# HVX30019 | |
| 0-8332802 (NCI) O C. 25.41 | increase | *$405,886* | W.R.# HVX30019 | — 0-8322802 BT. |
| `325438 (NIDDK) O C. 25.41 | increase | *$438,489* | W.R.# HVX30019 | |

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

ꟷHIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b)

x C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.243-4 Changes - Fixed Price (AUG 1987)

x D. OTHER (specify type of modification and authori **Unilateral Modification**

E. IMPORTANT: Contractor [x] is not. [ ] is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT/MODIFICATION(Organized by UCF section headings, including solicitation/contract subject matter where feasible.)

PURPOSE: This unilateral modification adds and provides equitable adjustment for changes to the work itemized following page of this modification.
**(Floor 4 Deferred Design)**

CONTRACT TITLE: Consolidated Laboratory Facility - Building 50 Bid Package No. 2

CONTRACT AMOUNT: $77,476,041.00 (an increase of $1,803,037.00)

CONTRACT EXPIRATION DATE: September 28, 2000 (30 calendar day time extension)

CONTRACT TYPE: Firm Fixed-Price Construction

Continued on Page 2

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, re 'ns unchanged and in full force and effect.

1 NAME AND TITLE OF SIGNER (Type or print)

16A. NAME AND TITLE OF CONTRACTING OFFICER (TYPE or print)
Barbara Taylor
Contracting Officer

NTRACTOR/OFFERER — BY (Signature of person authorized to sign) — 15C. DATE

16B. UNITED STATES OF AMERICA BY [signature] (Signature of Contracting Officer) — 16C. DATE 4/26/00

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

Standard Form 30 (Rev 10-83)
Prescribed by GSA

THE CONTRACT IS HEREBY MODIFIED AS FOLLOWS:

1. Part I, Section C, Paragraph 1 – STATEMENT OF WORK is hereby modified by adding work identified below by Change Number, Issuing document, Description and associated dollar amount:

| CHG NO. | DOCUMENT | DESCRIPTION | AMOUNT |
|---|---|---|---|
| 176 | NIH Sept. 30, 1999 RFP | Bulletin 35: 4th Floor Deferred Design Revisions | $1,803,037.00 |
| | RFI-871 | Finish Schedule Info for Rooms 4240-4254 (Even) | |
| | RFI-900 | Bulletin 30-35: Terminal Box Changes | |
| | RFI-1006 | Module 4240 | |
| | RFI-1007 | Missing Ductwork for Supply Box 449 | |
| | RFI-1022 | Missing Ductwork/VAV Box for Diffuser 48/95 Rm B406 | |
| | RFI-1061 | Isotope Lab 4254 | |
| | RFI-1090 | Cold Room 4426 & 4424 | |
| | RFI-1092 | Shift Demountable Partition @ Dark Room 4139A | |
| | RFI-1104 | Module 4141 Exhaust Register | |
| | RFI-1121 | Module 4430 Air Terminals | |
| | RFI-1190 | 3rd Floor 4th Floor Vending Area Lighting | |
| | RFI-CM142 | Vending / Break Areas @ 3rd and 4th floors | |
| | | **Total:** | $1,803,037.00 |

2. The contract period is extended thirty (30) calendar days to a new contract expiration date of: **September 28, 2000.**

3. All other terms and conditions of this contract remain unchanged.

4. This modification is executed unilaterally inasmuch as agreements could not be reached on the direct cost of labor and materials related to the changed work during several attempts to negotiate. Thus, a final price has not been agreed upon through negotiations.

Pursuant to the changes clause set forth in this contract, you are ordered to proceed with the performance of the work as described above in the statement of work up to and including the not-to-exceed amount of $1,803,037.00. The not-to-exceed amount stated herein does not represent the Government's estimated cost of this change, but an administrative obligation so that work can proceed. In consideration of this modification, the Contractor is entitled to reserve their rights under the changes clause of this contract.

***** Nothing Follows *****

# TIME IMPACT ANALYSIS

EWO 195, Basement EM Suite
EWO 208, First Floor Deferred Fit-out
EWO 210, Second Floor Deferred Fit-out
EWO 217, Third Floor Deferred Fit-out
EWO 226, Fifth Floor Deferred Fit-out
EWO 238, Sixth Floor Deferred Fit-out
EWO 257, Add Flush Sensors

The Extra Work Orders listed above are submitted for the Government's review in accordance with specification section 01310, Paragraph 7.01. This information is presented as the technical back-up to our request for a schedule extension due to the referenced EWO's.

We have included a spreadsheet which explains the procedure we followed per the specifications and the Government's request. We have also included two reports for each month. This format will allow the reviewer to clearly identify which specific activities caused the delay. The report further identifies each activities impact on the critical path.

1. Bar chart for each floor including the current activities compared withe previous month as a target line.
2. Tabular report sorted by total float.

Bell had previously issued our own fragnet analysis on the effect of these changes, detailing the methodology by which the durations per activity were derived from the negotiated proposals. This information was provided to the Government in early April 2000 and encompassed the February and March schedule updates resulting in a contract completion date of March 21, 2001. The Government responded with a rejection letter in early June and directed Bell to follow the specifications for preparing a TIA which we have provided here.

The analysis report on the attached sheet is set up to show the new project completion date based upon the activities that occurred in the fragnet during each month. The monthly updates are broken down further to show the variance between the *projected* contract completion date after input of the associated change order activities and our *actual* progress update at the completion of the month. The reviewer will recognize that despite the incorporation of the change order impacts, Bell was actually accomplishing more work than what the projections indicate on every update except December, 1999 and May, 2000. The December update was due to lower than expected manpower through the holiday season and the May update is a reflection of the need to incorporate the changes being worked on 4th, 5th and 6th floors which have not yet been input into the schedule.

As indicated on the Time Impact Report, the projected project completion date is September 20, 2001 based upon the specified procedure for calculating the impact to our scope of work. Bell had previously suggested what we believed to be a reasonable, honest and straight forward approach in calculating the delays caused by the deferred fit-outs. The Government responded by claiming that most of the delay, if not all, was due to contractor related problems and that their own analysis accounted for only 35 days of delay and that our method "greatly exaggerated the impact of the changes". By utilizing our original method of computing the delay, we had hoped to avoid the time and effort required to produce this document which could have been better served expediting subcontractor schedules and working on change orders.

Even though we followed the specified procedure in calculating the delay for this work, Bell recognizes that some of the delay was probably caused by revisions in the sequencing of work between June, 1999 and June, 2000. One example would be the re-sequencing of the first floor from first to last in succession. This undoubtably created some unnecessary negative float. This was one of the reasons that we chose to use our original procedure for calculating the delay.

In an effort to present a reasonable and fair approach to determining the actual delay caused by these changes, we enacted a "progress override" calculation that essentially eliminates problems with the logic. Interestingly enough, when we completed this calculation the project completion date was March 19, 2001. This is only 2 calender days different than our original proposal which was rejected.

Despite the cumbersome process of developing the attached documents, one thing has become very clear. Bell has been making significantly more progress than the Government acknowledges based upon the many change orders incorporated into this project. We caution that there are still other significant changes which have not yet been developed into a TIA and would show the contractor's progress in a much better light if they were added to the CPM schedule. We have listed these changes that require fragnets on our monthly narratives. Additionally, we believe that we have proven that our CPM logic is sound, that the "hundreds of activities" that our project scheduler made are accurate and justifiable and that Bell intends to present fair and reasonable proposals regarding the impacts caused by the many changes on this project.

Based upon the information presented in this document and the corresponding technical information we request that the Government modify our contract completion date from August 28, 2000 to March 21, 2001 which equates to 205 calender days or 142 work days. The 205 days of compensable delay will apply to the EWO's referenced in this document. As we have stated in previous correspondence, we believe that it is necessary to review the full impact of the final fourth floor changes prior to accepting the final 30 days to complete this work. Additionally, there are several changes which will most likely be absorbed in this extension time that have yet to be incorporated as schedule fragnets.

Once this extension is agreed upon Bell will evaluate and submit the cost of extending the project duration. If the Government requires any additional information or if you wish to meet to review this information we will be happy to assist.

AMENDMENT OF S TATION / MODIFICATION OF CONTR

1. CONTRACT OMB 0990 0115 | Page of Pages 1 of 3

| 2. AMENDMENT/MOD. NO. | 3. EFFECTIVE DATE | 4. REQUISITION/PURCHASE REQ. NO. | 5. Project No. (If applic.) |
|---|---|---|---|
| Modification No. 093 | Block 16c | | W.R# HVX30019 |

6. ISSUED BY CODE

National Institutes of Health
Acquisition Branch C, DSSC, OPM
9000 Rockville Pike, Bldg.13, Rm.G-800
Bethesda, MD 20892

7. ADMINISTERED BY (If other than item 6) CODE

Contracting Officer: Barbara Taylor
Tel. : (301) 435-4333
FAX: (301) 402-1103

8. NAME AND ADDRESS OF CONTRACTOR (No., Street, County, State, and ZIP Code)

Bell Company
10605 Concord Street, Suite 205
Kensington, Maryland 20895

CODE | FACILITY CODE

9A. AMENDMENT OF SOLICITATION NO.

9B. DATED (SEE ITEM 11)

10A. MODIFICATION OF CONTRACT/ORDER NO.

263-98-C-0102

10B. DATED (SEE ITEM 13)

March 26, 1998

11. THIS ITEM ONLY APPLIES TO AMENDMENTS OF SOLICITATIONS

☐ The above numbered solicitation is amended as set forth in item 14. The hour and date specified for receipt of Offers ☐ is extended, ☐ is not extended

Offers must acknowledge receipt of this amendment prior to the hour and date specified in the solicitation or as amended, by one of the following methods: (a) By completing items 8 and 15, and returning _________ copies of the amendment; (b) By acknowledging receipt of this amendment on each copy of the offer submitted; or (c) By separate letter or telegram which includes a reference to the solicitation and amendment numbers FAILURE OF YOUR ACKNOWLEDGMENT TO BE RECEIVED AT THE PLACE DESIGNATED FOR THE RECEIPT OF OFFERS PRIOR TO THE HOUR AND DATE SPECIFIED MAY RESULT IN REJECTION OF YOUR OFFER. If by virtue of this amendment you desire to change an offer already submitted, such change may be made by telegram or letter, provided each telegram or letter makes reference to the solicitation and this amendment, and is received prior to the opening hour and date specified.

12. ACCOUNTING AND APPROPRIATION DATA (IF REQUIRED)

| | | | | | |
|---|---|---|---|---|---|
| 0-8332125 | NCI-DCS | $3,124 | 0-8321966 | NHGRI | $43,185 |
| 0-8335389 | NIAID | $72,039 | 0-8334109 | NHLBI | $484,006 |
| 0-8325013 | NIAMS | $19,730 | 0-8322802 | NCI-DBS | $359,175 |
| 0-8324901 | NIDCD | $439,412 BT | 8-8330705 | ORS-DES | $469,650 |
| 0-8325438 | NIDDK | $406,641 | | | |

O C. 25.41 total increase = $2,296,962 BT. W.R.# HVX30019

13. THIS ITEM APPLIES ONLY TO MODIFICATIONS OF CONTRACTS/ORDERS, IT MODIFIES THE CONTRACT/ORDER NO. AS DESCRIBED IN ITEM 14.

A. THIS CHANGE ORDER IS ISSUED PURSUANT TO: (Specify authority) THE CHANGES SET FORTH IN ITEM 14 ARE MADE IN THE CONTRACT ORDER NO. IN ITEM 10A.

B. THE ABOVE NUMBERED CONTRACT/ORDER IS MODIFIED TO REFLECT THE ADMINISTRATIVE CHANGES (such as changes in paying office, appropriation date, etc.) SET FORTH IN ITEM 14, PURSUANT TO THE AUTHORITY OF FAR 43.103(b)

X C. THIS SUPPLEMENTAL AGREEMENT IS ENTERED INTO PURSUANT TO AUTHORITY OF: FAR 52.243-4 Changes - Fixed Price (AUG 1987)

D. OTHER (specify type of modification and authority)

E. IMPORTANT: Contractor ☐ is not. ☒ is required to sign this document and return 4 copies to the issuing office.

14. DESCRIPTION OF AMENDMENT / MODIFICATION (Organized by UCF section headings, including solicitation/contract subject matter where feasible).

| | | |
|---|---|---|
| PURPOSE: | This agreement is to modify the contract and to provide an equitable adjustment for changed work as itemized on the following page of this modification. | |
| CONTRACT TITLE: | Consolidated Laboratory Facility - Building 50 Bid Package No. 2 | |
| CONTRACT AMOUNT: | $81,326,544.00 | (an increase of $2,296,963.00) |
| CONTRACT EXPIRATION DATE: | April 15, 2001 | (No time extension) |
| CONTRACT TYPE: | Firm Fixed-Price Construction | |

Except as provided herein, all terms and conditions of the document referenced in item 9A or 10A, as heretofore changed, remain unchanged and in full force and effect.

15 A. NAME AND TITLE OF SIGNER (T
Robert DeRoo
Vice President

16A. NAME AND TITLE OF CONTRACTING OFFICER (TYPE or print)
Barbara Taylor
Contracting Officer

15B. CONTRACTOR/OFFERER
BY Robert F DeRoo VP
(Signature of person authorized to sign)

15C. DATE
10-2-00

16B. UNITED STATES OF AMERICA
BY Barbara Taylor
(Signature of Contracting Officer)

16C. DATE
10/2/00

NSN 7540-01-152-8070
PREVIOUS EDITION UNUSABLE

Standard Form 30 (Rev 10-83)
Prescribed by GSA
FAR (48 CFR) 53.243

THE GOVERNMENT AND THE CONTRACTOR MUTUALLY AGREE AS FOLLOWS:

1. Part I, Section C, Paragraph I – Statement of Work is hereby modified by adding work identified below by Change Number, Issuing Change Order, description and associated dollar amount:

| PCN | CHG NO. | CO | DESCRIPTION | AMOUNT |
|---|---|---|---|---|
| 595 | 384 | RFP-1009 | Fourth Floor fit Out Bilateral & Time Extension | $2,296,963.00 |
| | | | **Total:** | **$2,296,963.00** |

2. Revise Contract Section F, paragraph 1 - to reflect a contract completion date of April 30, 2001 and substantial completion milestones of:

| Area | Date |
|---|---|
| LAN Rooms | October 1, 2000 |
| Basement Vivarium | January 1, 2001 |
| Floor 2 | February 1, 2001 |
| Elevator 5 | February 1, 2001 |
| Basement other than Vivarium and Mechanical spaces | February 1, 2001 |
| Site Hardscape | February 1, 2001 |
| Floor 3 | February 15, 2001 |
| Floor 4 | March 1, 2001 |
| Elevators 1, 2, & 3 | March 1, 2001 |
| All MEP Systems, including Basement and Penthouse Mechanical Spaces | March 1, 2001 |
| Floor 5 | March 15, 2001 |
| Floor 6 | April 1, 2001 |
| Floor 1 | April 15, 2001 |
| Site Landscape | April 30, 2001 |

Final completion (including punchlist repairs) of the Basement Vivarium shall be completed within 30 calendar days of substantial completion of that space. The Contractor shall substantially complete cable tray and painting on Floor 2 and the Basement by October 1, 2000, Floor 3 by November 1, 2000, Floor 4 by December 1, 2000, Floor 5 by January 1, 2001, Floor 6 by February 1, 2000, and Floor 1 by March 1, 2001 If the Contractor fails to complete the painting by these dates, it shall "work around" the NIH telecommunications cabling without damage to the cabling. The Contractor shall provide safe pedestrian access to elevators 1, 2 & 3 by March 1, 2001. The Government and the Contractor shall share use of the loading dock and elevator 4 beginning February 1, 2001. "Lab Zones" and other floor specific functional performance tests (FPT's) will be performed during the 30 day period after each floor substantial completion date, all other FPT's will be performed by the MEP substantial completion date.

3. Revise Contract Section F Paragraph 2 to reflect liquidated damages of ($3,721/14 =) $266 for each calendar day of delay to each of the aforementioned 14 milestones.

4. Increase the contract amount by $2,296,963 ($4,100,000-$1,803,037 from Mod 77) as full and equitable adjustment for the remaining direct and indirect costs of the Floor 4 Fit-out (EWO 240-R1) and full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000.

NIH-9-04149

5. This agreement does not in any way affect entitlement to the direct cost of performance of any disputed changes. It does; however, incorporate the time impact of any disputed changes issued on or before August 31, 2000.

6. The Contractor shall revise its CPM schedule, incorporating the revised milestone dates and confirming its ability to meet them, including manpower requirements, and submit the revised schedule for Government review on or before September 30, 2000.

7. All other terms and conditions of this contract remain unchanged.

8. The modification agreed to herein is a fair and equitable adjustment for the Contractor's direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

*********************************Nothing follows**********************************************