IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BELL BCI COMPANY, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 03-1613C |
| | ) | (Judge Wolski) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

DEFENDANT'S OPPOSITION TO PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT; REPLY IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT; AND SUPPLEMENTAL APPENDIX

Pursuant to Rules 56 and 7.2(e) of the Court's Rules ("RCFC"), defendant, the United States, respectfully opposes the July 15, 2005 cross-motion of plaintiff, Bell BCI Company, for partial summary judgment and replies to Bell's response to our motion for partial summary judgment. (Bell has conceded our motion to dismiss Count VI. Pl. X-Mot. 1, 19.) In opposition to Bell's cross-motion, we also rely upon our accompanying responses to Bell's proposed findings of fact and the attached supplemental appendix ("Def. Supp. App.").

STATEMENT OF ADDITIONAL ISSUE FOR PLAINTIFF'S CROSS-MOTION

Whether, given the uncontroverted evidence that Bell missed all 14 substantial completion milestones, Bell must prove at trial that its failure to meet a given milestone is excused, in order to avoid liquidated damages for missing that milestone.

RESPONSE TO PLAINTIFF'S "SUMMARY" AND "STATEMENT OF THE CASE"

Pursuant to RCFC 56(h)(2), we respond to Bell's verbose proposed findings of fact in a separate document, which we respectfully incorporate by reference. A large number of plaintiff's allegations lack record support in conformity with RCFC 56(h)(1), are irrelevant to the issues raised in the cross-motions, or, frequently, both. Far more is required for a prima facie showing under RCFC 56(h)(1) of the absence of disputes of material fact.

To cite prominent examples, no probative evidence supports Bell's assertions that (i) the Government promised to provide "final design documents" for the additional floor in March 1999; (ii) the as-built third and fourth floors of Building 50 do not even resemble one another; (iii) the Government promised in 2000 to limit future changes; (iv) the contracting officer refused to negotiate acceleration costs; or that (v) the agency told Congress in 2002 that Bell had met the contractual schedule. See Pl. PFF ¶¶ 25, 42, 48, 70 and our responses.

Even assuming those allegations were relevant – which they are not – "the Court may not grant summary judgment . . . based solely on evidence that arguably may not be adduced and admitted at trial." Bannum, Inc. v. United States, 59 Fed. Cl. 241, 244 (2003) (citing Conoco, Inc. v. DOE, 99 F.3d 387, 393-95 (Fed. Cir. 1996)). "'No defense to an insufficient showing is

required.'" Adickes v. S.H. Kress Co., 398 U.S. 144, 161 (1970) (quoting 6 J. Moore, Federal Practice § 56.22(2) (2d ed. 1966)).

It is difficult to understand, furthermore, upon what basis Bell could put forward as an "uncontroverted fact," its allegation (which is also irrelevant) that the Government promised that the fourth floor would duplicate the third floor, a claim that Bell knows directly contradicts sworn testimony of Government personnel. See RCFC 56(h)(1) (moving party to set forth "material facts . . . as to which the party believes there is no genuine dispute"); 11(b)(3). We respond further to Bell's factual allegations as necessary to address its brief.

## ARGUMENT

### I. Bell Cannot Recover Damages For Changes For Which It Was Paid Under Bilateral Modifications 93 Through 140

The summary judgment standards are discussed in the Government's moving brief. Bell's arguments against our motion and for partial summary judgment lack legal and factual support.

We established in our moving brief that Bell signed a series of 44 bilateral contract modifications between October 2000 and April 2001, in which Bell agreed to final prices for numerous changes; did not reserve the right to file future claims regarding those changes; and, for good measure, "release[d] the Government from any and all liability under this Contract for further equitable adjustment attributable to [every] Modification." All authorities thus establish that accord and

satisfaction bars Bell from recovering additional compensation attributable to any of those changes. Def. Mot. 7-12.[1]

Bell not only opposes our motion, but argues that it is entitled to judgment rejecting this defense. Bell begins by citing "waiver" precedents. Pl. X-Mot. 9; see also id. at 19. This beginning is misplaced, since accord and satisfaction is not a doctrine of waiver, and an express release is not even necessary to establish an accord. See McLain Plumbing & Elec. Serv., Inc. v. United States, 30 Fed. Cl. 70, 79 (1993).

More relevantly, Bell acknowledges that the best evidence of the intent of the parties is the "objective" language of the 44 bilateral modifications. Pl. X-Mot. 12 (citing Jackson Constr. Co. v. United States, 62 Fed. Cl. 84, 92-93 (2004)). Bell then leaps immediately, however, away from the text of the modifications to allegations concerning parol evidence. Bell argues that all 44 bilateral modifications address only "delays" - not claims for disruption or cumulative impact - because, in Bell's view, the modifications do not cover costs that allegedly were "not [directly] discussed" in negotiations. Id. at 13-14.

---

[1] Bell asserts that its entire delay claim survives modifications 93-140. Pl. X-Mot. 12 n.1. That is an issue for trial, but Bell's expert report fails to justify its confidence. The report analyzes all "extra work orders generated after August 31, 2000" and the very first change analyzed - which Bell's expert concludes entitles Bell to a 17-day extension - was the subject of modification 121. Def. Supp. App. 42, 45.

There are at least four fundamental shortcomings in Bell's response to our defense. Two are legal and two are factual. First, as a matter of law, there is no basis to resort to parol evidence to interpret any of these 44 modifications. Extrinsic evidence is relevant only if the Court finds the contract language ambiguous and, even then, may be used "only to supplement the 'agreement by consistent additional terms.'" McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996) (emphasis added) (citing Sylvania Elec. Prods., Inc. v. United States, 198 Ct. Cl. 106, 458 F.2d 994, 1005 (1972), and Restatement (Second) of Contracts §§ 210 cmt. a, 213 cmt. c).

There is nothing remotely ambiguous about the statement contained in each and every modification at issue, that Bell received "full compensation" for the incorporated changes and "hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to this Modification." Bell asks the Court to supplement all 44 modifications with inconsistent terms - to the effect that the modifications did not provide "full" compensation, and that the Government may still be liable for costs "attributable to" the covered changes. No canon of construction supports inserting terms in a contract that directly contradict the words the parties used to express their meeting of the minds.

Second, although Bell accuses us of "stressing only one provision of the modifications and . . . ignor[ing] the rest," Pl. X-Mot. 14 (which we have not done), in reality, Bell ignores the most salient aspect of the modifications – namely, the complete absence of reservations of rights. As we have noted, "If plaintiff[] had intended to leave a claim . . . open, [its] intention to do so should have been made manifest and explicit . . . ." Cannon Constr. Co. v. United States, 162 Ct. Cl. 94, 319 F.2d 173, 177 (1963). There can be no "ambiguity" about Bell's failure to explicitly reserve claims; and reservations of rights cannot be inserted by means of parol evidence.

The agency had no obligation to obtain an affirmative "waiver" of rights from Bell in these agreements. Cf. Pl. X-Mot. 14. It was, to the contrary, Bell's well-known duty to be forthright with the Government, and to seek to negotiate the necessary language, if it wished to reserve potential claims for inefficiency. See R.M. Jones, Lost Productivity: Claims for the Cumulative Impact of Multiple Change Orders, 31 Pub. Cont. L.J. 1, 4 (2001).[2] Assuming that disruption and cumulative impact costs were not "not discussed" when these 44 modifications were

[2] We disagree with the finding in Atlantic Dry Dock Corp. v. United States, 773 F. Supp. 335 (M.D. Fla. 1991), that the release did not encompass the contractor's cardinal change claim, but that issue is irrelevant, because we have not argued that Bell cannot pursue its cardinal change claim. See Pl. X-Mot. 15.

negotiated, that is not the Government's fault or legal responsibility. See Pl. X-Mot. 13.

The contracting officer signed these modifications based upon their language as written. In simple fairness, as well as under the law, if Bell wished to preserve claims, Bell should have afforded the agency the opportunity to negotiate that issue. For the same reason, Bell's argument that the 44 bilateral modifications contain no "consideration" for Bell's failure to reserve claims is groundless. Id. at 16. Those 44 modifications increased the net contract price by more than $3.5 million in exchange for Bell's express written agreement to accept "full" compensation and reserve no rights. Def. PFF ¶¶ 14-57.[3]

In addition to its decisive legal errors above, Bell makes unsupported factual allegations. First, contrary to Bell's vague (and legally irrelevant) assertion that its disruption and cumulative impact claims "necessarily matured after [all of] these modifications were entered into," Pl. X-Mot. at 17, the complaint alleges – and Bell's project manager testified under RCFC 30(b)(6) – that "BELL notified NIH" after August 2000, but before March 2001, "that NIH's continued changes were negatively

---

[3] Our interrogatory response concerning our defense (which Bell truncates in its appendix) did not refer only to "delays." Cf. Pl. X-Mot. 13. We noted, among many other things, that the modifications at issue each "contained a complete release, covering both direct costs and time, and no reservation of claims." Pl. App. 69.

affecting BELL's ability to timely and efficiently complete the work." Compl. ¶ 57 (emphasis added); Def. Supp. App. 20-21 (Bardin Dep. 35-36).

By its own account, therefore, Bell could plainly foresee, when negotiating the modifications at issue between September 2000 and April 2001, that it might incur inefficiency costs when performing the work. Claims for such costs thus "existed," could be settled, and were settled in the modifications. See Pl. X-Mot. 17 (quoting Chesapeake & Potomac Tel. Co. of Va. v. United States, 228 Ct. Cl. 101, 654 F.2d 71, 716 (1981)). Bell's assertion that it could not reserve those inefficiency claims, or settle them, until after the foreseen inefficiency costs were actually incurred and the claims "matured" is plainly wrong. See, e.g., Seeds & Derham v. United States, 92 Ct. Cl. 97, 110 (1941) ("Plaintiffs . . . consented to the modification of the contract and proceeded with the work.").

Finally, another factual gap precludes, at a bare minimum, judgment in Bell's favor with respect to accord and satisfaction concerning modifications 94 through 140. Even assuming the Court concludes that parol evidence is relevant, Bell focuses upon modification 93 and identifies no parol evidence concerning modifications number 94-140. Bell asserts baldly that the negotiation history of modifications 94-140 is "undisputed" - yet its appendix citations - including the wholly conclusory

declaration of its project manager – relate exclusively to modification 93. Pl. X-Mot. 13 (citing Pl. App. 9, 66). Absent probative evidence in the record, Bell cannot meet its burden under RCFC 56(h)(1) to demonstrate an absence of genuine disputes of fact concerning the 43 bilateral modifications at issue after number 93 with rhetoric. See Carrier Corp. v. United States, 6 Cl. Ct. 169, 176 (1984). The Court need not reach this issue, however, given that the text of all 44 modifications unambiguously establishes accord and satisfaction.

## II. The Government Properly Assessed Liquidated Damages

Bell's request for partial summary judgment concerning liquidated damages rests upon a basic legal error, this time concerning the burdens of proof. Bell correctly notes that "[t]he Government bears the burden of going forward, as well as the ultimate burden of proof" regarding the liquidated damages assessed as the result of Bell's missing all 14 completion milestones. Pl. X-Mot. 17. Bell errs, however, in arguing that the evidence of record does not satisfy our prima facie burden because we have not presented evidence as to whether Bell's acknowledged delays were excused.

A contractor seeking to avoid liquidated damages must establish both the existence and the extent of excusable delay. Sauer Inc. v. Danzig, 224 F.3d 1340, 1347 (Fed. Cir. 2000); Central Ohio Bldg. Co., PSBCA No. 2742, 92-1 BCA ¶ 24,399. The

Government satisfies its initial burden by demonstrating that the number of days by which completion was delayed justifies the amount of liquidated damages imposed. See PCL Constr. Servs., Inc. v. United States, 53 Fed. Cl. 479, 484 (2002). Here, this is a matter of arithmetic, which Bell has not challenged. Pl. App. 134; Def. Supp. App. 47, 51. If the contractor offers evidence of excusable delay, defendant carries its burden by rebutting it. E.g., Morganti Nat., Inc. v. United States, 49 Fed. Cl. 110, 132-40 (2001), aff'd mem. (Fed. Cir. 2002).

In the oft-cited Central Ohio decision of the Postal Service Board of Contract Appeals, for example, the board found that the agency carried its initial burden to support liquidated damages simply by showing that the length of delay, "from the day after the contract completion date . . . until . . . the date of substantial performance, was correctly computed to be 75 days." 92-1 BCA at 121,824. At that point in Central Ohio, just as here, "the burden of going forward shifted to [the contractor] to show that any delays were excusable and that it should be relieved of all or part of the assessment." Id.

CONCLUSION

For the reasons above, the Court should deny Bell's cross-motion for partial summary judgment and grant our motion.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s
by Todd M. Hughes
BRYANT G. SNEE
Assistant Director

s/Kyle Chadwick
KYLE CHADWICK
Trial Attorneys
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street N.W., 8th Floor
Washington, D.C. 20530
Tele: (202) 305-7562

Attorneys for Defendant

August 15, 2005

INDEX TO DEFENDANT'S SUPPLEMENTAL APPENDIX

Transcript of deposition of
Brian A. Temme (excerpts).......................................1

Transcript of deposition of
Jeremy Bardin (excerpts)........................................9

Transcript of deposition of
Frank Michael Kutlak (excerpts)................................22

Executive Monthly Report, December 1998........................27

Executive Monthly Report, April 1999...........................29

Project diaries of Brian A. Temme (excerpts)...................31

Speed memo dated 11/09/00 from Bell to Jacobs
Facilities.....................................................35

Letter dated February 2, 2001 from contracting
officer to Bell................................................36

Bell's response to defendant's interrogatory
number 4 (December 17, 2003)...................................38

Patrick W. Brannon Expert Report (excerpts)....................41

Ted M. Scott Expert Report (excerpts)..........................49

CERTIFICATE OF FILING

I certify that on August 15, 2005, the foregoing response to proposed findings was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Kyle Chadwick