**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BELL BCI COMPANY,** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **No. 03-1613C** |
| | ) | **Judge Wolski** |
| **THE UNITED STATES OF AMERICA,** | ) | |
| **Defendant.** | ) | |

**PLAINTIFF'S SUPPLEMENTAL APPENDIX IN SUPPORT OF PLAINTIFF'S CROSS-MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

**Richard O. Wolf**
**Robert D. Windus**
**MOORE & LEE, LLP**
**1750 Tysons Boulevard, Suite 1450**
**McLean, Virginia 22102-4225**
**Telephone: (703) 506-2050**
**Facsimile: (703) 506-2051**
**E-mail: r.wolf@mooreandlee.com**

**Dated: September 1, 2005**

**Counsel for Plaintiff**

# INDEX TO PLAINTIFF'S SUPPLEMENTAL APPENDIX


| DESCRIPTION | PAGE |
|---|---|
| Amended Notice of Deposition of Defendant……………………………………………….. | 1 |
| Government's Rule 30(b)(6) Deposition Transcript………………………………………… | 3 |
| Change Order No. 29…………………………………………………………………... | 6 |
| Government's Summary of Negotiations (Referencing Change Order No. 29)………. | 7 |
| BELL's Expert Report (excerpted)……………………………………………………. | 9 |

**CERTIFICATE OF SERVICE**

I hereby certify that on the 1st day of September, 2005, I caused a true and correct copy of the foregoing to be served via the Court's ECF procedures on defendant's counsel:

Kyle Chadwick
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. 8th Floor
Washington, D.C. 20530

/s/ Richard O. Wolf
Richard O. Wolf

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| **BELL BCI COMPANY,** <br> **Plaintiff,** <br> **v.** <br> **THE UNITED STATES OF AMERICA,** <br> **Defendant.** | ) | **No. 03-1613C** <br> **(Judge Wolski)** |

**AMENDED NOTICE OF DEPOSITION OF DEFENDANT**

PLEASE TAKE NOTICE THAT, pursuant to RCFC 30(b)(6), and in accordance with the agreement reached between counsel for the parties, the Plaintiff, BELL BCI Company ("BELL"), will take the deposition upon oral examination of Defendant, The United States of America (the "Government" or "Defendant"), on Friday, February 4, 2005, commencing at 10:00 a.m. at the offices of MOORE & LEE, LLP, 1750 Tysons Boulevard, Suite 1750, McLean, Virginia 22102-4225. The deposition shall be before a notary public or some other person authorized by law to administer oaths. The testimony shall be recorded by stenographic or other means. In accordance with RCFC 30(b)(6), the Government shall designate one or more persons to testify on its behalf regarding the matters set forth in Exhibit A attached hereto.

**PERSON(S) SHALL BE DESIGNATED TO TESTIFY REGARDING THE FOLLOWING MATTERS:**

1. The Government's evaluation of the work that BELL performed under the Contract.

2. The Contracting Officer's Final Decision on the REA submitted by BELL on the Project and the findings and conclusions set forth therein.

3. The payments by the Government, the requests for payments by BELL, any notices of non-payment related to BELL's work under the Contract, and the dates and sources of any payments, requests for payments, or notices of non-payment related to BELL's work under the Contract and on the Project.

4. The critical path method schedule for the Project.

5. The Extra-Work Orders submitted by BELL relating to the Project including, but not limited to, any EWOs considered by the Government to be in dispute and/or to be negotiated.

6. The Change Orders issued by the Government relating to the Project including.

7. The Modifications issued by the Government relating to the Project.

8. The Change Bulletins issued by the Government relating to the Project.

9. The Government's interpretation of the "Kit of Parts" pricing mechanism set forth in Solicitation No. 263-98-P-(CL)-0102, Part I, Section B, at p. B-2 though p. B-3.

10. The addition of a new 4th Floor for the Project including, but not limited to, communications with BELL regarding the 4th Floor as is discussed in BELL's Complaint in this case, including without limitation, ¶¶ 21-27 of the Complaint filed in this action.

11. The Project schedule, the Government's schedule for BELL's work, the Government's schedule for the other suppliers, sub-contractors or other persons or entities who performed work on the Project, including but not limited to Brown & Root, the Project's critical

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - x

BELL BCI COMPANY, :

Plaintiff, :

vs. : No. 03-1613C
: (Judge Wolski)

THE UNITED STATES OF AMERICA, :

Defendant. :

- - - - - - - - - - - - - - - - - - - - x

McLean, Virginia

Thursday, February 24, 2005

Deposition of FRANK MICHAEL KUTLAK, called for examination by counsel for the plaintiff, pursuant to notice, at the office of Richard O. Wolf, Esq., Moore & Lee, LLP, 1750 Tysons Boulevard, Suite 1450, McLean, Virginia, before Laurel P. Platt, a Registered Diplomate Reporter and a Notary Public in and for the State of Virginia, beginning at 10:05 a.m., when were present on behalf of the respective parties:

A Sure.

Q We are here today because the Government has designated you as its Rule 30(b)(6) designee to answer various topic matters for the deposition. So what I'd like to first do is to hand you a copy of what we will mark as Deposition Exhibit 1, which is an Amended Notice of Deposition.

(The Amended Notice of Deposition of Defendant was marked Kutlak Deposition Exhibit No. 1 for identification.)

Mr. Kutlak, I've handed you the Amended Notice of Deposition which is Exhibit 1. And if you turn to it's marked as page 5, I believe. It begins the listing of the topics. They're separately numbered paragraphs.

I'll note that on the final page, paragraph 21 has been stricken by agreement with the Government, and paragraph 18 was modified to reflect what is stated here. But my general question: Is it correct you are here to testify on behalf of the Government on the matters that are listed here?

A Yes.

this extra floor. It was not a hard-and-fast plan.

Q If you look under the Schedule heading there, too, of this Exhibit 5, it says, "The project currently is on schedule." Is that accurate at the time you wrote that?

A I believe so, yes. It was very, very early. It's when they were just working on the frame of the building.

Q I want to follow up a little bit about the anticipated time frame for issuing final plans. In that regard, I'll show you what we will mark as Exhibit 8.

(The 3/10/99 e-mail was marked Kutlak Deposition Exhibit No. 8 for identification.)

Exhibit 8, Mr. Kutlak, is a document produced to us by the Government. It's dated -- the date on it is March 10, '99. In there, it talks about under paragraph 2 -- I believe this was sent to HLM Design. It says, "Please proceed immediately with the target of completion by March 31." Does that refer to the completion of the design for the new floor?

| PCN | DOCUMENT | DESCRIPTION |
|---|---|---|
| **TABLE A - Changes with cost or time impact** | | |
| 135 | BUL - 003 | Additional Floor Balance Bulletin (March 31, 1999 printing, which supersedes March 19, 1999 "Not For Construction" printing) |
| 156 | BUL - 006 | Equipment Changes for Additional Floor |
| 157 | BUL - 007 | Emergency Generator Rating Change for Additional Floor |
| 158 | BUL - 010 | Penthouse Structural Steel Changes for Additional Floor |

**NTE Amount: $7,992,252**

**NOTES:**

1. Proceed with the following work: Implement the Government direction given in the above noted documents. The obligation of the Government for the total work performed under this change order shall not exceed the NTE Amount noted above. The not-to-exceed amount stated in this change does not represent the Government's estimated cost of this change, but an administrative obligation so that work can proceed.

2. A complete proposal is to be submitted within Thirty (30) days of the effective date of this change. Your proposal must include an itemized cost breakdown in accordance with Contract Section H Paragraph 7(a). A Time Impact Analysis (TIA) is to be submitted in accordance with Specification Section 01310 Paragraph 7.01 within seven (7) days of the effective date of this change in the event that the Contractor requests an extension of the contract period. The Government will negotiate a final price prior to 50% (dollar value) of the work being completed. In the event that the cost exceeds the stated not-to-exceed amount prior to the negotiation of an equitable adjustment, you are to notify the Contracting Officer no later than seven (7) days prior to the date you anticipate exceeding the stated not-to-exceed amount. Upon completion of a negotiation, a supplemental agreement will be issued to incorporate the negotiated equitable adjustment for this change.

3. If you believe that any of the changes noted in Table B above result in additional cost and/or time, provide technical and contractual arguments supporting your position in a letter to the Contracting Officer either prior to or concurrent with your cost proposal.

NIH-9-19184

Definitions: RFI - Request for Information (provided under separate cover)
BUL - Bulletin (provided under separate cover)

Ptf. Supp. App.
6

# SUMMARY OF NEGOTIATIONS

Contractor: Bell Company
10605 Concord Street, Suite 205
Kensington, MD 20895

W.R. No.: HVX30019

Request for Proposal No.: NA

Contract No.: 263-98-C-0102

Change No.: 032

Modification No.: 024

A. Description of Articles and Services and Period of Performance

Items:

1. Change No. 032– Balance of the additional floor – Bulletin # 3.

Delivery: August 29, 2000 (30 days - time extension)

Total Price: $6,891,118.00

B. Acquisition Planning

N/A

C. Synopsis of Proposed Acquisition

The acquisition has not been publicized under FAR Subpart 5.2. This contract action is made under the terms of an existing base contract that was previously synopsized in sufficient detail to comply with the requirements of 5.207 with respect to the current contract action.

D. Contract Type

This is a firm fixed-price contract.

E. Extent of Competition

N/A

NIH-9-19030

F. Technical Evaluation

N/A

G. Business Evaluation

The Contractor was issued Change Order No.29 on March 29, 1999. The Government received a proposal from the Contractor (EWO # 101) dated June 2, 1999 for Change Order No.29 (Change No. 032) to install the balance of the building components required for the additional floor.

Ptf. Supp. App.
7

L. Other Considerations

N/A

M. Terms and Conditions

The terms and Conditions of the base contract apply to this change.

N. Recommendation

It is hereby recommended that a bilateral modification in the amount of $6,891,118 with a time extension of 30 days be awarded to Bell Company as fair and equitable. Execution of a bilateral contract modification for the scope of work specified in Paragraph A above at the amount of $6,891,118 is in the best interest of the Government.

O. Signature

Barbara Taylor (signature) 6/9/99

Barbara Taylor Date

NIH-9-19032

# BELL BCI Company
# vs.
# The United States of America

USCFC CASE NO. 03-1613C

UNITED STATES COURT OF FEDERAL CLAIMS

## The National Institutes of Health
## Louis Stokes Laboratories / Building 50
## Bethesda, Maryland

## Expert Report
**September 9, 2004**

Prepared for:

Moore & Lee, LLP
Attorneys at Law
McLean, Virginia

Prepared By:

Oxley & Brannon Construction Consultants, Inc.
Saint Petersburg, Florida

Patrick W. Brannon, P.E.

## INTRODUCTION

Oxley & Brannon Construction Consultants, Inc. has been retained by BELL, through their Law Firm of Moore & Lee, LLP, to provide opinions as to the issues related to the construction of this Project.

Since 1983, Oxley & Brannon Construction Consultants, Inc. (OBCCI) has provided consulting services to the construction industry including analysis, reporting and expert testimony. Oxley & Brannon Construction Consultants, Inc. has experience as experts in the areas of contract administration, scheduling, costs, damages, delays, acceleration, loss of efficiency, construction and engineering. OBCCI are not attorneys, nor do we render legal opinions; therefore, nothing contained in this report should be construed as a legal opinion.

Patrick W. Brannon, P.E., will be providing Expert Testimony in this matter in the following areas:

- CPM Scheduling and Scheduling Analysis
- Delay and Impact Analysis
- Construction Costs, Damages, Estimating and Cost Accounting

- Contract Administration
- Labor Productivity
- Constructability, Design and Engineering

We have requested and received various documents produced recently during this litigation to assist us in preparation of this report. We have reviewed and performed an analysis of BELL's schedules on the project. Currently it is our understanding that discovery is continuing and we reserve the right to modify and supplement this report based on our review of the additional discovery.

## SUMMARY OF OPINIONS AND BASIS

- BELL is entitled to a compensable extension of the Contract Time beyond the April 30, 2001 completion date of 284 days.
- BELL is entitled to recover the costs as detailed in this report associated with reduced productivity and disruption as a result of the impact of changes on unchanged work as well as the cumulative impact of Government ordered changes to the scope of the work including the effect of the cardinal change addition of the new fourth floor.

- The Government is not entitled to liquidated damages either as an affirmative claim or as a setoff against the monies due BELL.

**Time Impact Analysis**

## Introduction

This section is an assessment of BELL's entitlement to an extension of Contract time for the project. Time Impact Analyses (TIA) are presented for the change orders/modifications issued by the Government to BELL, after the issuance of Contract Modification #93.

This project was completed in phases and fourteen substantial completion milestones were established to denote the dates for the various areas/systems in the Building. On October 2, 2000, Contract Modification #93 was signed by the Government and BELL in recognition of the additional scope of work for the fourth floor and "for all delays resulting from any and all Government changes

transmitted to the Contractor on or before August 31, 2000." The fourteen project milestone dates were updated to the dates shown below.

| AREA | DATE |
|---|---|
| LAN Rooms | October 1, 2000 |
| Basement Vivarium | January 1, 2001 |
| Floor 2 | February 1, 2001 |
| Elevator 5 | February 1, 2001 |
| Basement (other than Vivarium and other mechanical spaces) | February 1, 2001 |
| Site Hardscape | February 1, 2001 |
| Floor 3 | February 15, 2001 |
| Floor 4 | March 1, 2001 |
| Elevators 1, 2, and 3 | March 1, 2001 |
| All MEP Systems | March 1, 2001 |
| Floor 5 | March 15, 2001 |
| Floor 6 | April 1, 2001 |
| Floor 1 | April 15, 2001 |
| Site Landscape | April 30, 2001 |

Contract Modification #93 also revised the calculation method for liquidated damages. An assessment of $266 was established for each calendar day of delay of the interim milestones. The total Contract dollar amount was increased by $2,296,963 for the following:

> "…as full and equitable adjustment for the remaining direct and indirect costs of the Floor 4 Fit-out (EWO 240-R1) and full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000."

This analysis began with a review of all of the changes that were issued by the Government after August 31, 2000, with the exception of disputed EWO's that

the Government has not yet acknowledged as a change in the scope of the work. After a review of the time impact of the undisputed changes, it was clear that BELL was entitled to sufficient time to satisfy the actual delays that occurred; therefore it was unnecessary to perform a time impact analysis of the disputed EWO's or EWO's generated prior to August 31, 2000. However, we reserve the right to further assess the impact of these additional changes and other EWO's that were in existence prior to August 31, 2000, but not yet finalized as a change to the Contract in the form of a Modification.

The majority of the EWO's analyzed were initiated with a Request for Information (RFI) document either submitted by BELL or the Owner's Representatives (CRSS Constructors/Jacobs Engineering). The balance of the modifications began with a verbal or written directive to BELL for a change to the work. A subset of the changes issued after Mod 93, totaling 128, were specifically identified for this evaluation.

A Time Impact Analysis was then performed on these changes to determine if a delay occurred to any of the project milestones, including Contract completion. This was accomplished by creating a fragnet for each change and adding these to the current schedule that existed at the time that the change was issued to BELL. Requisite logic ties were added between the work activities in the fragnet

and specific activities in the schedule so that impacts could be accurately measured. After all of the individual Time Impact Analyses were conducted, it was found that 49 of those changes caused a delay to one or more of the project milestones. These 49 TIA schedule names begin with the letter "T". This subset of changes was subsequently ordered by their notice to proceed date and assessed using a window analysis. The twelve analysis schedules begin with the letter "C."

The procedure utilized follows that set forth in the Contract. Section 01310 – Schedules and Reports, Part 7 Schedule Time Extensions, Paragraph 7.01.B as excerpted below (See Exhibit #92 for the Contract Specification Section 01310 document), states:

> "Each TIA shall demonstrate the estimated time impact based on the data the change was issued to the Contractor, the events of the delay, the status of construction at that point in time, and the event time computation of all activities effected by the change or delay. The event times used in the TIA shall be those included in the latest update of the Project Schedule in effect at the time the change or delay was encountered."

This procedure is a prospective procedure looking forward in time to assess the "potential" impact of Government ordered changes. The procedure anticipates that the Government will evaluate the effect of a change prior to ordering its performance. The procedure does not require the analysis of the actual performance of the changed work or other subsequent delays that may actually

occur as a result of other changes or delays caused by other events, including contractor caused delays. The evaluation of concurrency is unnecessary as well, as when properly utilized in prospective manner, none of those events would have occurred yet. Unfortunately, as often happens on construction projects, in order to expedite the performance of the work the contractor is directed to perform the changed work prior to the evaluation of its potential impact. As a result, we are often faced with applying the contract required TIA process after the fact, with the knowledge of the actual event times of the fragnet instead of utilizing estimated time prospectively. As a result, we are in effect estimating the impact of actual events on the contractor's contemporaneous schedule in use at the time the event occurred.

To eliminate the possibility of compounding the effect of multiple change in this analysis, we look at each change independent of the changes that have proceeded it in our analysis. In effect, we evaluate change No 1 by inputting its fragnet into the schedule in effect at the time and make an assessment of its "potential" impact. We then remove this fragnet as if the Government elected not to proceed with the change, and the input Change No. 2 into the schedule to evaluate its impact, effectively reviewing each change independently much like the Government would if the usual exigencies of accomplishing the changed work expeditiously did not exist.

The methodology when used after-the-fact does not completely ignore the effect of other delay event or concurrency because we use the contractor's regular updates produced contemporaneously. The process becomes self-correcting, as subsequent updates generated by the Contractor will not have the after-the-fact fragnet in them. They may have the effects of the change to some degree, but they will also indicate the effect of the other events that have occurred since the previous update and the effect of all these events on the completion milestones. For example, say Change No.1 was input into update number 1 and demonstrated an entitlement to five days of extension. However, say update No. 2, which does not have the fragnet of the change included, indicates that - by actions which are the responsibility of the Contractor - the project completion milestone is 10 days behind the contract date, and therefore 5 days behind the properly extended completion as impacted by Change No.1. Now when Change No. 2 is inserted into update No. 2, the measurement of its impact will be determined by the completion milestone indicated in the update which is 10 days late. If the events of the activities affected by Change No. 2, after input of the fragnet have event float less than the float of the completion milestone that reflects the 10 day delay, the contractor will not be entitled to an extension.

As designed, the TIA procedure outlined in this contract is basically one of determining the impact of Government Changes on the project and therefore the contractors entitlement to extensions of the contract time, not a direct after-the-fact assessment of the contractor's performance.

BELL generated an Extra Work Order (EWO) for each change that was issued by the Government. Each fragnet is identified by the EWO number and contains information on the corresponding RFI number(s), if applicable. In some cases, BELL was asked to proceed with work prior to obtaining a negotiated dollar amount for the change. In other cases, BELL was asked to submit a cost proposal prior to completing the work for a given change. If a cost proposal was requested prior to performing the work, the fragnets reflected the negotiation process activities. If BELL was asked to proceed with a change before agreeing on the costs, the negotiation activities were not included in the fragnet.

The table below lists the Extra Work Orders/fragnets that are examined in this report with the corresponding Schedule Update, individual TIA schedule, schedule data date, and notice to proceed date. The listing is ordered by the notice to proceed date.

| Number | EWO Number | Schedule Update Name | Individual TIA Schedule | Window Analysis Schedule | Schedule Data Date | Notice to Proceed Date |
|---|---|---|---|---|---|---|
| 1 | 465 | N127 | TA27 | C127 | 09/01/00 | 09/20/00 |
| 2 | 461 | N128 | TD28 | C128 | 10/01/00 | 10/02/00 |
| 3 | 511 | N128 | TB28 | C128 | 10/01/00 | 10/03/00 |
| 4 | 478 | N128 | TE28 | C128 | 10/01/00 | 10/04/00 |
| 5 | 639 | N128 | TC28 | C128 | 10/01/00 | 10/12/00 |
| 6 | 483 | N128 | TF28 | C128 | 10/01/00 | 10/17/00 |
| 7 | 484 | N128 | TA28 | C128 | 10/01/00 | 10/25/00 |
| 8 | 497 | N129 | TI29 | C129 | 11/01/00 | 11/14/00 |
| 9 | 518 | N129 | TH29 | C129 | 11/01/00 | 11/20/00 |
| 10 | 493 | N129 | T129 | C129 | 11/01/00 | 11/21/00 |
| 11 | 530 | N130 | T130 | C130 | 12/01/00 | 12/01/00 |
| 12 | 475 | N131 | TD31 | C131 | 01/01/01 | 01/08/01 |
| 13 | 553 | N131 | TK31 | C131 | 01/01/01 | 01/09/01 |
| 14 | 554 | N131 | TL31 | C131 | 01/01/01 | 01/09/01 |
| 15 | 556 | N131 | TC31 | C131 | 01/01/01 | 01/09/01 |
| 16 | 488 | N131 | TE31 | C131 | 01/01/01 | 01/12/01 |
| 17 | 523 | N131 | TA31 | C131 | 01/01/01 | 01/12/01 |
| 18 | 560 | N131 | TF31 | C131 | 01/01/01 | 01/12/01 |
| 19 | 572 | N131 | TG31 | C131 | 01/01/01 | 01/22/01 |
| 20 | 573 | N131 | TH31 | C131 | 01/01/01 | 01/22/01 |
| 21 | 504 | N131 | TJ31 | C131 | 01/01/01 | 01/23/01 |
| 22 | 574 | N131 | TI31 | C131 | 01/01/01 | 01/23/01 |
| 23 | 487 | N131 | T131 | C131 | 01/01/01 | 01/31/01 |
| 24 | 570 | N132 | T132 | C132 | 02/01/01 | 02/01/01 |
| 25 | 525 | N132 | TB32 | C132 | 02/01/01 | 02/08/01 |
| 26 | 593 | N132 | TD32 | C132 | 02/01/01 | 02/14/01 |
| 27 | 600 | N132 | TF32 | C132 | 02/01/01 | 02/14/01 |
| 28 | 589 | N132 | TA32 | C132 | 02/01/01 | 02/15/01 |
| 29 | 596 | N132 | TE32 | C132 | 02/01/01 | 02/21/01 |
| 30 | 557 | N133 | TE33 | C133 | 03/01/01 | 03/06/01 |
| 31 | 543 | N133 | TA33 | C133 | 03/01/01 | 03/07/01 |
| 32 | 476 | N133 | T133 | C133 | 03/01/01 | 03/26/01 |
| 33 | 515 | N133 | TD33 | C133 | 03/01/01 | 03/29/01 |
| 34 | 620 | N133 | TC33 | C133 | 03/01/01 | 03/29/01 |
| 35 | 473 | N134 | T134 | C134 | 04/01/01 | 04/10/01 |
| 36 | 632 | N134 | TA34 | C134 | 04/01/01 | 04/27/01 |
| 37 | 646 | N134 | TC34 | C134 | 04/01/01 | 04/30/01 |
| 38 | 509 | N135 | TL35 | C135 | 05/01/01 | 05/01/01 |
| 39 | 528 | N135 | TH35 | C135 | 05/01/01 | 05/16/01 |
| 40 | 653 | N135 | TE35 | C135 | 05/01/01 | 05/21/01 |

| | | | | | | |
|---|---|---|---|---|---|---|
| 41 | 655 | N135 | TA35 | C135 | 05/01/01 | 05/21/01 |
| 42 | 678 | NA37 | TG37 | C137 | 07/02/01 | 07/12/01 |
| 43 | 685 | NA37 | TB37 | C137 | 07/02/01 | 07/12/01 |
| 44 | 686 | NA37 | TC37 | C137 | 07/02/01 | 07/24/01 |
| 45 | 687 | NA37 | TD37 | C137 | 07/02/01 | 07/24/01 |
| 46 | 688 | NA37 | TE37 | C137 | 07/02/01 | 07/24/01 |
| 47 | 689 | NA37 | TF37 | C137 | 07/02/01 | 07/26/01 |
| 48 | 700 | NA39 | TA39 | C139 | 09/01/01 | 09/19/01 |
| 49 | 566 | N242 | TA42 | C142 | 12/01/01 | 12/07/01 |

Each Schedule Update window is presented below with the fragnets that were incorporated into the schedules and the corresponding Time Impact Analysis for each fragnet (EWO). Exhibits are referenced, for each EWO, which contain pertinent documents that are specified in the narratives. These documents include the Request for Information paperwork, correspondence, cost proposals (EWO), and Modifications (Change Orders). A fragnet bar chart and corresponding Claim Digger report are also incorporated into these exhibits. The Claim Digger reports detail the changes to BELL's schedule based on the fragnet addition to the network. A summary is presented at the end of each Schedule Update segment outlining the impact to project milestones during the update period due to the incorporation of the fragnet(s).

A compact disc (CD) is included in Exhibit #6 with electronic copies of all the Primavera backup files for the schedules designated in this paper. Schedules that begin with the letter "N" are BELL's schedule updates that were submitted during the course of the project. "T" schedules are individual TIA schedules for

one specific EWO, and "C" schedules are the window analysis containing all of the Extra Work Orders for a given schedule update window. Bar chart reports of the "N" and "C" schedules are further provided in additional exhibits.

**Conclusions of Time Impact Analysis**

The changes we have analyzed resulted in a delay to the Contract completion milestone of 284 calendar days from April 30, 2001 to February 8, 2002. This figure was obtained in accordance with the requirements of the Contract as found in the Contract Specification Section 01310 – Schedules and Reports, Part 7 Schedule Time Extensions, Paragraph 7.01.B as excerpted below (See Exhibit #92 for the Contract Specification Section 01310 document).

> "Each TIA shall demonstrate the estimated time impact based on the date the change was issued to the Contractor, the events of the delay, the status of construction at that point in time, and the event time computation of all activities effected by the change or delay. The event times used in the TIA shall be those included in the latest update of the Project Schedule in effect at the time the change or delay was encountered."

A fragnet was presented for each change outlined in this report and inserted into the project schedule in effect at the time that BELL was notified to proceed with the change. The fragnet work activities were logically tied to pertinent activities in the project schedules to properly assess the delay, if any, to the project milestones.

The post-Modification #93 changes to the Contract also caused delays to the majority of the fourteen interim milestones. The table below is a list of these milestones. The actual completion dates were obtained from Government-issued letters approving substantial completion dates for each interim milestone (See Exhibit #93). The TIA date noted is the latest date calculated from the window analyses, if applicable, along with the corresponding EWO number.

| AREA | Actual Completion Date | TIA Date | EWO # |
|---|---|---|---|
| LAN Rooms | 10/01/00 | N/A | N/A |
| Vivarium | 05/10/01 | 05/24/01 | 484 |
| Balance of Basement | 06/15/01 | 06/26/01 | 484 |
| First Floor | 09/28/01 | 11/19/01 | 487 |
| Second Floor | 04/11/01 | 06/21/01 | 478 |
| Third Floor | 04/10/01 | 07/17/01 | 543 |
| Fourth Floor | 05/08/01 | 08/03/01 | 478 |
| Fifth Floor | 08/29/01 | 10/08/01 | 487 |
| Sixth Floor | 08/09/01 | 10/29/01 | 487 |
| MEP Milestone | 09/12/01 | 10/12/01 | 700 |
| Elevators 1, 2, and 3 | 04/28/01 | N/A | N/A |
| Elevator 5 | 05/29/01 | N/A | N/A |
| Site Hardscape | 12/04/01 | N/A | N/A |
| Site Landscape | 12/04/01 | N/A | N/A |

The LAN rooms were completed on schedule on October 1, 2000. All of the floors, the vivarium, and the MEP systems were completed behind schedule due to the multitude of changes issued by the Government. Substantial completion milestones were not established for the elevators and site work; therefore, the window analyses did not reveal any impacts to these areas. Although these milestones were not directly incorporated into the schedule distinctly, the completion of these areas was clearly dependant on completion of adjacent and related work for which BELL is entitled to additional time by our analysis and therefore BELL is also entitled to extension of the elevator and site work milestones. Contrary to the Government's position, however, the site hardscape and landscape activities were completed in time for the dedication of the facility which occurred on June 14, 2001. In addition, the completion of elevator 5 was contingent upon the construction of the vivarium which was completed on May 10, 2001.

Therefore, it is our conclusion that BELL is entitled to an excusable and compensable extension of the Contract Time of 284 days and that the Government is not entitled to Liquidated Damages.