# In the United States Court of Federal Claims

No. 03-1613C
(Filed: July 14, 2006)

| | |
|---|---|
| BELL BCI COMPANY, Plaintiff, v. THE UNITED STATES, Defendant. | Building Construction; Cumulative Impact Claims; Accord and Satisfaction; Release; Reservation of Rights; Liquidated Damages; Promissory Estoppel. |

*Richard O. Wolf*, with whom was *Robert D. Windus*, Moore & Lee, LLP, McLean, Virginia, for Plaintiff.

*Kyle Chadwick*, with whom were *Peter D. Keisler,* Assistant Attorney General, *David M. Cohen,* Director, and *Bryant G. Snee,* Assistant Director, United States Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., *Douglas Kornreich* and *Krystal A. Jordan*, Department of Health and Human Services, Of Counsel, for Defendant.

## OPINION AND ORDER

WHEELER, Judge.[1]

This case is before the Court on Defendant's motion to dismiss a promissory estoppel count of Plaintiff's Complaint for lack of subject matter jurisdiction, and on the parties' cross-motions for partial summary judgment regarding accord and satisfaction issues. The parties' dispute arises from a building construction project for the National Institutes of Health ("NIH") in Bethesda, Maryland. Among a host of changes on the project, the Government added a new floor to the building design after construction had commenced.

[1] This case was transferred to Judge Thomas C. Wheeler on June 1, 2006, pursuant to Rule 40.1(b) of the Rules of the Court of Federal Claims.

Plaintiff Bell BCI Company ("Bell") alleges a "cumulative impact" claim against the Government for the disruptive effect of the many modifications issued during the course of the project. In defense, the Government asserts that Bell agreed to the allowance of additional time and compensation in 44 individual modifications, reserved no rights to further relief, and released the Government from any further equitable adjustment attributable to each modification. Bell also moves for partial summary judgment on the ground that the Government improperly assessed liquidated damages.

Without objection from Bell, the Court grants Defendant's motion to dismiss Count VI of the Complaint, relating to Bell's allegations of promissory estoppel. In all other respects, the Court denies the parties' cross-motions for partial summary judgment. While it may be that Defendant ultimately can show a valid accord and satisfaction defense, or that Bell can show an improper assessment of liquidated damages, the outcome of those issues is heavily fact dependent. The briefing on the pending motions has demonstrated that the parties disagree on many of the relevant facts of the case. A trial will be necessary to address and resolve the material fact issues.

## Factual Background[2]

On March 26, 1998, NIH awarded Contract No. 263-98-C-0102 to Bell for the fixed price of $63,663,745 to construct a new laboratory research building at NIH's Bethesda, Maryland campus. The new building, known as NIH Building 50, originally was designed to have five above-ground stories and a functional basement. The Contract called for Bell to complete the project within 821 calendar days after NIH issued the notice to proceed. NIH issued this notice on April 1, 1998, making the completion date June 29, 2000. If Bell did not complete the work within the agreed time, NIH could assess liquidated damages against Bell of $3,721 for each day of contractor delay.

In December 1998, with construction well underway, NIH notified Bell that it wanted to add a new fourth floor to the building, changing the design from a five-story to a six-story structure. NIH requested Bell to prepare a proposal for the fourth floor addition. The fourth floor negotiations between NIH and Bell proceeded in three phases: (1) structural steel and concrete work; (2) core and shell work; and (3) fit out work. In early 1999, NIH agreed to Bell's proposal for the fourth floor structural steel and concrete work, adding $1,579,127 to

[2] The facts recited herein are from the parties' briefs and proposed findings of fact relating to the motions for partial summary judgment, and from an Appendix of documents that Plaintiff ("Pl. App.") and Defendant ("Deft. App.") each filed with the Court. These facts provide a brief overview for background purposes, and are not necessarily binding upon the parties or the Court at the trial to follow.

the contract price, and extending the completion date by 30 days to July 29, 2000. On June 23, 1999, NIH and Bell agreed to a modification for the fourth floor core and shell work, adding $6,891,118 to the contract price, and extending the completion date by another 30 days.

The resolution of phase three for the fourth floor fit-out work did not proceed as smoothly. On October 2, 2000, after extensive negotiations, NIH and Bell entered into bilateral contract Modification No. 093, increasing the contract price by $2,296,963 and establishing a new completion date of April 30, 2001. In this modification, the parties also set 14 substantial completion milestone dates between October 1, 2000 and April 30, 2001, and changed the liquidated damages amount to $266 per calendar day for contractor delays in meeting any of the 14 milestone dates.[3] This modification expressly resolved all time impact and delay issues relating to changes issued on or before August 31, 2000. The modification contained the following release language:

> 8. The modification agreed to herein is a fair and equitable adjustment for the Contractor's direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

(Pl. App. at 64; Deft. App. at 23). Between October 2, 2000 and April 5, 2001, NIH and Bell entered into 43 other bilateral contract modifications, designated as Modification No. 094 through Modification No. 140, all of which contained the same release language as above.

None of these 44 bilateral modifications contains a reservation of rights by Bell to assert a later claim for cumulative impact, disruption, or labor inefficiency. However, the modifications do not contain any explicit release of such claims either. The specific facts underlying Plaintiff's claim are not yet in evidence, and the Court cannot determine whether Plaintiff's claim is "attributable to the Modification," or is an "indirect cost" covered by the release language above. Id. Similarly, the Court cannot yet discern when Plaintiff's claim matured to the point that Plaintiff knew or should have known that it was experiencing cumulative impact, disruption, or labor inefficiency. It does not appear that any of these 44 bilateral modifications included a payment to Bell that might be regarded as legal consideration for the costs of cumulative impact, disruption, or labor inefficiency.

---

[3] The modification's new daily rate for liquidated damages, $266, is simply the original daily rate, $3,721, divided by 14, and rounded to the nearest dollar.

After April 5, 2001, the parties executed other modifications beginning with Modification No. 142, dated September 10, 2001, through Modification No. 205, dated September 22, 2003. These later modifications contain a contractor reservation of rights stating "[t]his agreement does not affect the contractor's rights for damages due to any delays or disruptions that may have occurred as a result of this work." See, e.g., Pl. App. at 95. The Contracting Officer typically inserted a handwritten notation on the modification stating "[t]his modification and the language reserving to the contractor certain rights does not constitute an admission by the Government that the contractor is entitled to an equitable adjustment." Id.

On July 31, 2001, Bell submitted a letter to NIH seeking to reserve its rights retroactively for "additional compensation for delays, disruptions and/or damages resulting from the changes" since September 1, 2000. (Deft. App. at 169).

The parties disagree on the date of project completion. Bell asserts in its Complaint that NIH took beneficial occupancy of the project as early as March 26, 2001 when it began to use and occupy the second floor (Complaint at ¶ 64), that Bell substantially completed the base contract work on December 31, 2001, id. at ¶ 65, and that Bell substantially completed the NIH changed work by February 5, 2002. Id. at ¶ 66. Defendant denies all of these allegations, but does not state when it believes Bell completed the project. (Answer at ¶¶ 64, 65, 66).

On April 5, 2002, Bell submitted a request for equitable adjustment to the Contracting Officer, which included Bell's own increased costs and the "pass through" requests of five subcontractors on the project. The requests for equitable adjustment are not in the record, but based upon descriptions in the pleadings, they apparently include claims for labor inefficiency and cumulative impact, among other things, plus a time extension to the contract completion date. By a July 1, 2002 final decision, the Contracting Officer denied the Bell and subcontractor requests in their entirety, and asserted claims against Bell for liquidated damages, credits for deleted items of work, costs for performing retesting, and costs to correct alleged deficiencies in the work. Bell filed this lawsuit on June 27, 2003. The Court has jurisdiction of this matter pursuant to the Tucker Act, 28 U.S.C. § 1491(a)(1), and the Contract Disputes Act, 41 U.S.C. § 609(a).

## Discussion

### A. Dismissal of Promissory Estoppel Count

Defendant has moved to dismiss Count VI of Bell's Complaint containing promissory estoppel allegations. Bell alleged in the Complaint that "[p]ursuant to the doctrine of

promissory estoppel, NIH is . . . liable to Bell for damages . . . plus a 245 calendar day extension of time . . . ." (Complaint ¶ 96). Defendant states that the Court must dismiss this allegation, because the Tucker Act, 28 U.S.C. § 1491, does not confer jurisdiction for promissory estoppel claims, a theory based upon contracts implied-in-law. See, e.g., LaMirage, Inc. v. United States, 44 Fed. Cl. 192, 200 (1999) (citing Hercules v. United States, 516 U.S. 417, 423 (1996)). Bell does not object to Defendant's motion in this regard. Accordingly, Count VI of the Complaint is hereby DISMISSED.

B. Accord and Satisfaction Issues

An accord and satisfaction is a defense that terminates any previous right that a party may have had to assert a claim of the same subject matter. See C&H Commercial Contractors, Inc. v. United States, 35 Fed. Cl. 246, 252 (1996) (quoting Chesapeake & Potomac Tel. Co. v. United States, 228 Ct. Cl. 101, 108, 654 F.2d 711, 716 (1981)). An "accord" is a contract under which both parties agree that one party will render additional or alternate performance to settle an existing claim made by the other party, and "satisfaction" is the actual performance of the accord. Id. The party asserting an accord and satisfaction defense must establish four elements: (1) proper subject matter; (2) competent parties; (3) a meeting of the minds; and (4) consideration. Jackson Constr. Co. v. United States, 62 Fed. Cl. 84, 92 (2004) (citing Brock & Blevins Co. v. United States, 170 Ct. Cl. 52, 59, 343 F.2d 951, 955 (1965)). As stated in Jackson, "the Court must focus on whether or not the parties' objective manifestations of intent demonstrate that they reached a meeting of the minds with respect to the release of additional claims." Id. at 93.

In this case, the accord and satisfaction issues center on the substance and wording of Modification No. 093, dated October 2, 2000. In Block 14, "Description of Amendment/Modification," the "Purpose" states: "This agreement is to modify the contract and to provide an equitable adjustment for changed work as itemized on the following page of this modification." (Pl. App. at 62; Deft. App. at 21). The modification adds $2,296,963 to the contract price, and establishes a new completion date of April 30, 2001.[4] Id. The Contracting Officer's Summary of Negotiations for Modification No. 093, dated September 25, 2000, states that "[a] Delay Costs [sic] of $700,000 was added to this Modification in an

[4] In Block 14, the modification indicates that April 15, 2001 is the completion date, but in paragraph 2, the modification states that April 30, 2001 is the new completion date. While the Court accepts April 30, 2001 as the correct date – it is the last of the 14 milestone completion dates – this inconsistency is yet another anomaly in a modification that is not a model of clarity. As another example, in paragraph 6, the modification calls for Bell to submit "the revised schedule for Government review on or before September 30, 2000," a date that precedes the signing of the modification. (Pl. App. at 64; Deft. App. at 23).

effort to compensate the Contractor for any delay claims related to the deferred design Bulletins and all Government changes transmitted to the Contractor on or before August 31, 2000." (Pl. App. at 66). However, neither the modification nor the Contracting Officer's Summary of Negotiations mentions a claim for disruption, cumulative impact, or labor inefficiency.

There is a distinction in the law between: (1) a "delay" claim; and (2) a "disruption" or "cumulative impact" claim. Although the two claim types often arise together in the same project, a "delay" claim captures the time and cost of *not* being able to work, while a "disruption" claim captures the cost of working less efficiently than planned. See U.S. Industries, Inc. v. Blake Constr. Co., Inc., 671 F.2d 539, 546 (D.C. Cir. 1982) (unlike a delay claim that provides redress from not being able to work, a disruption claim compensates for damages when the work is more difficult and expensive than anticipated). Thus, by including $700,000 for delay damages in Modification No. 093, the parties did not thereby address any claim for disruption or cumulative impact.

Elsewhere in Modification No. 093, the parties agreed to the price increase with the following language:

> 4. Increase the contract amount by $2,296,963 . . . as full and equitable adjustment for the remaining direct and indirect costs of the Floor 4 Fit-out (EWO 240-R1) and full and equitable adjustment for all delays resulting from any and all Government changes transmitted to the Contractor on or before August 31, 2000.

(Pl. App. at 63; Deft. App. at 22). Again, this language addresses Bell's delay claim, but does not refer to claims for disruption or cumulative impact. The phrase "indirect costs of the Floor 4 Fit-out" may have been intended to cover disruption or cumulative impact claims, but such an intent is not clearly expressed. The term "indirect costs" can have other meanings. It is often used, for example, in describing overhead or general and administrative expenses that must be allocated among projects, instead of being charged to a project directly.

In the next paragraph, Modification No. 093 contains a statement regarding the status of "disputed changes:"

> 5. This agreement does not in any way affect entitlement to the direct cost of performance of any disputed changes. It does[,] however, incorporate the time impact of any disputed changes issued on or before August 31, 2000.

(Pl. App. at 64; Deft. App. at 23). The "disputed changes" in this paragraph are not elsewhere identified. The reference to the "time impact of any disputed changes" addresses delay claims, but did not address disruption or cumulative impact claims. The term "direct cost" also is undefined and potentially ambiguous. The absence of the term "indirect costs" from this paragraph may have significance, but perhaps not.

Finally, Modification No. 93 contains the release paragraph cited earlier in this opinion, reprinted below:

> 8. The modification agreed to herein is a fair and equitable adjustment for the Contractor's direct and indirect costs. This modification provides full compensation for the changed work, including both Contract cost and Contract time. The Contractor hereby releases the Government from any and all liability under this Contract for further equitable adjustment attributable to the Modification.

Id. The terms "direct and indirect costs" and "attributable to this Modification" in this paragraph lack precision and are not elsewhere explained or defined. The Court cannot say whether they were intended to embrace Bell's potential disruption or cumulative impact claims.

The Court does not see that the parties included any payment to Bell in Modification No. 093 or in the other 43 bilateral modifications for disruption or cumulative impact. The Court similarly does not know at this stage when Bell knew or should have known that it had a mature disruption or cumulative impact claim. While certainly a prudent contractor might have explicitly reserved its rights to assert a later disruption claim, the same prudence might have lead the Government to obtain an explicit release of all disruption or cumulative impact claims. Events during the later stages of the project, including the language of Modification Nos. 142 through 205 and Bell's July 31, 2001 letter, suggest that the parties did not agree on the scope of Modification No. 93 and the subsequent 43 modifications. The parties have cited selected deposition excerpts to augment their positions, but under the circumstances, a full airing at trial appears necessary.

With reference to the four elements of an accord and satisfaction from Jackson Constr. Co., 62 Fed. Cl. at 92, the Court cannot conclude without more that there was any "meeting of the minds" on a release of Bell's disruption or cumulative impact claims, or that there was any consideration for the release of such claims. Recognizing that these two elements may or may not be satisfied through additional evidence, the Court cannot grant either party's motion for partial summary judgment on the accord and satisfaction defense. Accordingly, these motions shall be DENIED.

C. Liquidated Damages

Bell contends that the Government has the burden of going forward to establish the propriety of its liquidated damages assessment. See, e.g., PCL Constr. Services, Inc. v. United States, 53 Fed. Cl. 479, 484 (2002). In this case, Bell asserts that the Government must determine the extent of delay for each of the 14 milestone completion dates established in Modification No. 093, and then allocate on a reasonable basis the responsibility for any delay between Bell and the Government. According to Bell, part of the analysis involves determining the effect that Government changes had on the work relating to each milestone. Based upon deposition testimony of the Government's expert, however, Bell asserts that the Government has not performed any analysis for individual milestone completion dates. (Deposition of Ted M. Scott, January 28, 2005, at 77). Bell also points to an NIH representation to Congress that the Building 50 Project was completed "on schedule." (NIH Annual Performance Plan and Report, February 2002).[5] Bell states that the NIH representation to Congress is at odds with any assessment of liquidated damages.

For its part, Defendant argues that the Government has met its initial burden of going forward simply by showing the length of the delay from the scheduled date of completion until the actual date of substantial completion. See, e.g., Central Ohio Building Co., PSBCA No. 2742, 92-1 BCA ¶ 24,399. At that point, the burden shifts to the contractor to show the extent of its excusable delays, and to demonstrate that it should be relieved of all or part of the liquidated damages assessment. Central Ohio, 92-1 BCA at 121,824.

While the assessment of liquidated damages normally is a fact-driven determination, it is particularly so in this case. Because of the parties' change to 14 milestone completion dates in Modification No. 093, and the assessment of liquidated damages against each milestone, this project in reality has 14 completion dates instead of just one. Bell has cited two key problems that it sees in the Government's assessment of liquidates damages, but these are two pieces of evidence in what surely is a larger factual puzzle. Bell may be correct that the shortcomings it has cited are fatal to the Government's calculation of liquidated damages. However, the Court simply must await a fuller development of the record. The parties likely will present evidence at trial of the extent of the contractor's delay in meeting each of the 14 milestone completion dates, and whether the delays encountered constitute excusable delay under the contract. These are factual issues that cannot be decided on cross-motions for partial summary judgment. Accordingly, Bell's motion with respect to liquidated damages is DENIED.

---

[5] Under the Government Performance and Results Act ("GPRA"), 31 U.S.C. § 1115 et seq., NIH reports annually to Congress on a host of budget and performance matters.

Conclusion

Based on the foregoing, Defendant's motion to dismiss the promissory estoppel count of Plaintiff's Complaint is GRANTED, and in all other respects, the parties' cross-motions for partial summary judgment are DENIED. The Court will set a mutually convenient status conference with counsel for the parties to establish a trial schedule.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge