**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| **BELL BCI COMPANY,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**THE UNITED STATES OF AMERICA,**<br><br>**Defendant.** | **No. 03-1613C**<br>**Judge Wheeler** |

**PLAINTIFF'S PROPOSED CONCLUSIONS OF LAW**

Pursuant to the Court's Amended Pretrial Order, the Plaintiff, BELL BCI Company ("BELL" or "Plaintiff"), respectfully submits Plaintiff's Proposed Conclusions of Law. BELL incorporates herein by reference Plaintiff's Statement of Contested Factual Issues and Contentions of Fact It Expects to Prove at Trial, as well as the Stipulation of Uncontested Material Facts which was submitted jointly with the Defendant (the "Government").

## I. INTRODUCTION

This case arises out of a contract (the "Contract") between BELL, a general contractor, and the Government concerning the construction of a new laboratory research building, referred to as NIH Building 50, located at the National Institutes of Health's ("NIH") Bethesda, Maryland campus (hereinafter the "Project" or "Building 50" or "Stokes Laboratories"). BELL submitted a Request for Equitable Adjustment ("REA") seeking an increase in the Contract time and price due to the extensive amount of additional work that the Government forced BELL to perform in a disruptive manner and which, cumulatively, negatively impacted and delayed BELL's performance. Several of BELL's subcontractors, Stromberg Metal Works, Inc., Young Electrical Contractors, Inc., ISEC, Inc., Manganaro Corporation, and NLP Enterprises, Inc., submitted

separate REAs (hereinafter the "Subcontractors' REAs"). The Contracting Officer issued a final decision[1] which denied BELL's REA and the Subcontractors' REAs, and assessed liquidated damages and other costs against BELL. BELL then filed suit in this Court.

At trial, BELL shall establish entitlement to, and the reasonableness of, the damages sought from the Government. BELL shall establish that the Contracting Officer erred in denying its REA and the Subcontractor REAs, and in assessing liquidated damages and other costs. *See* Complaint, Counts I, II and V. BELL shall also establish that the Government breached the Contract by directing it to perform additional work in a disruptive manner that, cumulatively, negatively impacted and delayed BELL's performance. *See* Complaint, Count III. In the alternative, BELL shall establish that the numerous changes made by the Government to the scope of work were so far beyond the changes provision agreed to in the Contract as to constitute a cardinal change, thereby entitling BELL to recover damages, plus delay and other costs arising therefrom. *See* Complaint, Count IV.

The Government asserts that BELL is not entitled to any increase in the Contract time or price. With respect to BELL's cumulative impact claim and its inefficiency claim, the Government relies upon the affirmative defenses of accord and satisfaction and/or waiver. The evidence at trial shall show that the Government has failed to prove its affirmative defenses.

In sum, the legal issues in dispute fall into eight general categories: (i) Equitable Adjustment for Changes; (ii) Contract Interpretation; (iii) Delay Damages; (iv) Cumulative Impact Damages; (v) Cardinal Change; (vi) Waiver; (vii) Accord and Satisfaction; and (viii) Liquidated Damages. Each of these legal issue categories is summarized in section II, *infra*.

---

[1] Pursuant to the Contracts Disputes Act, 41 U.S.C. §§ 605 (a) and 609(a)(3), the Contracting Officer's decision is not entitled to any presumption of correctness. Judicial review proceeds *de novo*.

## II. SUMMARY OF LEGAL ISSUES

### A. EQUITABLE ADJUSTMENT FOR CHANGES

"A plaintiff is entitled to an equitable adjustment when required to perform work not called for in the contract, when performance generated additional expense, by a defendant who has mistakenly interpreted the contract to require that work." *Design and Production, Inc. v. United States*, 18 Cl.Ct. 168, 196 (1989) (holding that contractor was entitled to an equitable adjustment for performing extra work), *citing, United States v. Turner Constr. Co.*, 819 F.2d 283, 286 (1987) (affirming entitlement to equitable adjustment). A government contractor is entitled to equitable adjustment to contract price upon showing the reasonableness of costs claimed and a causal connection between such costs and the event giving rise to the claim. *Delco Electronics Corp. v. United States*, 17 Cl. Ct. 302, 320 (1989) (awarding equitable adjustment). Thus, "the contractor should establish a logical connection between the costs and the event upon which the equitable adjustment claim is based." *Id.* at 320.

These principles are embodied in the "Changes" clause in the Federal Acquisition Regulations ("FAR"), which was expressly incorporated by reference into the Contract between BELL and the Government. This FAR "Changes" provision states in relevant part as follows:

> **If any change under this clause causes an increase or decrease in the Contractor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any such order, the Contracting Officer <u>shall</u> make an equitable adjustment and modify the contract in writing . . .**

FAR, § 52.243-4(d), Changes (emphasis added).[2]

[2] Section H(8) of the Contract also sets forth a "changes" provision. This Contract provision is set forth in Plaintiff's Identification of Relevant Contract Clauses and Applicable Regulations.

Determining the reasonableness of the equitable adjustment "can only be made by reference to contemporary notions of fairness and equity, and by taking into account the totality of circumstances." *Delco Electronics*, 17 Cl. Ct. at 321. "The duty of the court then, is to determine what a reasonably prudent contractor would have done under the circumstances . . ." *Id*.

**B. <u>CONTRACT INTERPRETATION</u>**

The overriding rule of contract interpretation is that "the language of a contract must be afforded the meaning derived from the contract by a reasonably intelligent person acquainted with the contemporary circumstances." *Firestone Tire & Rubber Co. v. United States*, 195 Ct. Cl. 21, 444 F.2d 547, 551 (1971) (citation omitted). "In resolving a dispute of interpretation, the primary purpose of the court is to ascertain the intent of the parties." *Design and Production, Inc.*, 18 Cl.Ct. at 196 (1989) (citation omitted). This often requires the Court to place itself "into the shoes of a 'reasonable and prudent' construction contractor when [it] consider[s] the language of the contract and attempt[s] to divine its meaning." *Firestone*, 444 F.2d at 551 (citation omitted).

"Thus, in its interpretation of the contract, the court will give weight to what the parties initially believed their respective obligations to be prior to any dispute." *Sipco Services & Marine, Inc. v. United States*, 41 Fed. Cl. 196, 213 (1998) (citations omitted). Accordingly, the Court strives to give "reasonable meaning" to all parts of the contract documents, rather than interpret it in a way "which leaves a portion of it useless, inexplicable, inoperative, void, insignificant, meaningless or superfluous . . ." *Hol-Gar Mfg. Corp. v. United States*, 169 Ct.Cl. 384, 395, 351 F.2d 972, 979 (1965) (citations omitted). Finally, the party that drafted the contract "must bear the risk of any contractual uncertainty, ambiguity or inequitable

consequence." *Firestone*, 444 F.2d at 551. "Whether a contract provision is ambiguous is . . . a question of law." *Grumman Data Systems Corp. v. Dalton*, 88 F.3d 990, 997 (Fed. Cir. 1996) (holding that provision was ambiguous).

### C. DELAY DAMAGES

As the Court has previously noted, "[t]here is a distinction in the law between: (1) a 'delay' claim; and (2) a 'disruption' or 'cumulative impact' claim. Although the two claim types often arise together in the same project, a 'delay' claim captures the time and cost of *not* being able to work, while a 'disruption' claim captures the cost of working less efficiently than planned." *BELL BCI Co. v. United States*, 72 Fed. Cl. 164, 168 (2006), *citing*, *U.S. Industries, Inc. v. Blake Constr. Co., Inc.,* 671 F.2d 539, 546 (D.C. Cir. 1982) (distinguishing between delay and inefficiency claims). *See also*, *Atlantic Coast Mechanical v. R.W. Allen Beers Construction*, 264 Ga. App. 680, 684, 592 S.E.2d 115, 118 (2003) (holding that "no damages for delay" clause in contract did not bar disruption claims).

"A contractor seeking to prove the government's liability for a delay must establish the extent of the delay, the contractor's harm resulting from the delay, and the causal link between the government's wrongful acts and the delay." *Essex Electro Engineers, Inc. v. Danzig*, 224 F.3d 1283, 1289 (Fed. Cir. 2000). However, "all delay due to defective or erroneous Government specifications are *per se* unreasonable and hence compensable." *Id.* at 1289, *quoting*, *Chaney & James Constr. Co. v. United States*, 190 Ct.Cl. 699, 421 F.2d 728, 732 (1970).

In addition to the "changes" clause, the FAR provides an alternative basis for recovering costs incurred due to Government-caused delay. The standard FAR "Suspension of Work" provision, FAR § 52.242-14, states in relevant part that if the Government causes a delay for an

unreasonable period, "an adjustment shall be made for any increase in the cost of performance of this contract . . ." This provision was incorporated by reference into the Contract.

### D. CUMULATIVE IMPACT

"In the government contracts context, the U.S. Court of Claims and the various boards of contract appeals have recognized a general right to recover for the cumulative effect of a multitude of owner-directed changes that, when taken collectively, can be greater than the sum of the effects of the individual change orders." R. M. Jones, *Lost Productivity: Claims for the Cumulative Impact of Multiple Change Orders*, 31 Pub. Cont. L.J. 1-2 (2001) (copy submitted as Exhibit A hereto). Whereas a change order may directly change the work being performed in a specific area, recovery under a cumulative impact claim rests on the acknowledgment that a change order "may also affect the other areas of the work that are not addressed by the change order." *Id.* at 2. Thus:

> **Unlike the direct impact claim, which can be recognized when a change order is issued, the cumulative impact claim represents a claim for lost productivity on unchanged work that contractors claim is not foreseeable at the time the change order is issued. Specifically, unchanged work refers to the contract work not covered by a specific change order.**

*Id.* at 7. *Cf.*, *Roberts Constr. Co.*, 81-1 BCA ¶ 15,104 at p. 2 (holding that change orders did not bar equitable adjustment and stating that "[i]t is unrealistic to expect a construction contractor always to be in a position to price forward a required change arising during the course of performance with full awareness of the impact the changes will have on the project.") (copy submitted as Exhibit B hereto).

"Cumulative impact claims are fact-intensive and require the contractor to substantiate its claims that its work was delayed or was performed in an inefficient, unproductive, or more costly manner as a result of the individual changes to the Contract." *Jackson Constr. Co. v. United*

*States*, 62 Fed. Cl. 84, 104 (2004) (citations omitted). The costs associated with a cumulative impact claim have been described as:

> **. . . costs associated with impact on distant work, and are not readily foreseeable or, if foreseeable, as not [sic] readily computable as direct impact costs. The source of such costs is the sheer number and scope of the changes to the contract. The result is an unanticipated loss of efficiency and productivity which increases the contractor's performance costs and usually extends his stay on the job.**

*David J. Tierney, Jr., Inc.*, 88-2 BCA ¶ 20,806 at p. 59 (awarding cumulative impact damages) (copy submitted as Exhibit C hereto).

### E. CARDINAL CHANGE

"A cardinal change is a substantial deviation from the original scope of work that changes the nature of the bargain between the parties." *Thermocor, Inc. v. United States*, 35 Fed. Cl. 480, 490 (1996). "Because a cardinal change fundamentally alters the contractual undertaking of the contractor, it is not comprehended or redressable by the standard FAR clauses . . ." *Becho, Inc. v. United States*, 47 Fed. Cl. 595, 600-01 (2000). Simply put, a cardinal change constitutes a material breach of contract which "has the effect of freeing the contractor of its obligations under the contract, including its obligations under the disputes clause." *Id.* at 600 (citation omitted).

"Whether a change is cardinal is principally a question of fact, requiring that each case be analyzed individually in light of the totality of the circumstances." *Becho*, 47 Fed. Cl. at 601. Thus, depending on the circumstances, a single change, or a combination of changes, may constitute a cardinal changes. *See* P. Bruner and P. O'Connor, *Construction Law*, § 4:15 ("Although adding a wing or an additional floor to the building under construction is indicative of a potential 'cardinal' change, multiple changes within the structure itself, which have significant disruptive effect on the contractor's performance, cost and time, may also constitute a 'cardinal' change.") (copy submitted as Exhibit D).

**F. <u>WAIVER</u>**

"[I]t is a well established rule of law that 'waivers of rights must be voluntary, knowing and intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *Reliance Ins. Co. v. United States*, 20 Cl.Ct. 715, 723 (1990) (citations omitted). "Waiver requires (1) the existence at the time of the waiver a right, privilege, advantage or benefit that may be waived; (2) the actual or constructive knowledge thereof; and (3) an intention to relinquish such right, privilege, advantage or benefit." *Youngdale & Sons Constr. Co. v. United States*, 22 Cl.Ct. 345, 346 (1991). *See also, A Olympic Forwarder, Inc. v. United States*, 33 Fed. Cl. 514, 521 (1995).

**G. <u>ACCORD AND SATISFACTION</u>**

Accord and satisfaction is an affirmative defense. *See* Fed.R.Civ.P. 8(c). "The party asserting an accord and satisfaction defense must establish four elements: (1) proper subject matter; (2) competent parties; (3) a meeting of the minds; and (4) consideration." *BELL BCI Co.*, 72 Fed. Cl. at 168, *citing, Jackson Constr. Co. v. United States*, 62 Fed. Cl. 84, 92 (2004). "As stated in *Jackson*, 'the Court must focus on whether or not the parties' objective manifestations of intent demonstrate that they reached a meeting of the minds with respect to the release of additional claims.'" *BELL BCI Co.*, 72 Fed. Cl. at 168. Thus:

> **Unless specifically represented otherwise, a change order should not and cannot be interpreted to discharge a claim which is not genuinely in actual or potential dispute at that time, for there can be no mutual agreement with respect to that claim.**

*Blake Constr. Co.*, 80-2 BCA ¶ 14,756 (1980) at p. 5 (holding that change orders did not bar claims for impact costs) (copy submitted as Exhibit E hereto). *See also*, *David J. Tierney, Jr., Inc.*, *supra* at p. 61 (holding that change orders did not bar a cumulative impact claim: "Furthermore, we do not find that appellant 'reserved' any claim for cumulative impact costs.

Rather, we find that claim was never part of the contract modification negotiations. In addition, given the nature of the damages, one would not expect it to have been. The parties impliedly agreed to exclude those costs from discussion, and they therefore played no role in the change orders to which the parties ultimately agreed."); and *Roberts Constr. Co.*, *supra*, at p. 2 ("Moreover, there is not an absolute requirement that a contractor affirmatively reserve its claim.").

Accordingly, "the Court must look beyond the mere existence or nonexistence of any release language or reservation of rights in a bilateral modification" in order to determine whether there has been an accord and satisfaction. *Jackson*, 62 Fed. Cl. at 92. Finally, "even if the parties have executed a clear and unambiguous release, this Court can void or reform the release on several grounds, including lack of consideration, lack of performance, lack of authority, unilateral or mutual mistake, misrepresentation, duress, or under other circumstances in which the parties' conduct evinces an intent to allow additional claims." *Jackson*, 62 Fed. Cl. at 93. *Cf.*, *David J. Tierney, Jr., Inc.*, 88-2 BCA ¶ 20,806 at p. 2 (holding that a cumulative impact claim was not barred because "the negotiated prices of the contract changes failed to address this cumulative impact experienced, and therefore do not preclude appellant's claim by way of an accord and satisfaction").

### H. LIQUIDATED DAMAGES

"The government has 'the ultimate burden of persuasion as well [as] the initial burden of going forward to show that the contract was not completed by the agreed contract completion date and that liquidated damages were due and owing.'" *PCL Construction Services, Inc. v. United States*, 53 Fed. Cl. 479, 484 (2002) (citation omitted). "The government may meet its initial burden by showing that 'the contract performance requirements were not substantially

completed by the contract completion date and that the period for which the assessment was made was proper.'" *Id*. at 484 (citation omitted). "The general rule . . . that, once the government has met its initial burden of going forward, the contractor must prove excusable delays to be relieved of all or part of the liquidated damages assessed, has not been applied, however, when the government has contributed to the delay of the completion of the contract." *Id*. *See also*, *United States v. United Engineering & Constructing Co.*, 234 U.S. 236, 242, 49 Ct.Cl. 689, 34 S.Ct. 843, 58 L.Ed. 1294 (1914) (in order to enforce a liquidated damages clause, the government "'must not prevent the performance of the contract within the stipulated time[.]' When performance of the contract is delayed by the government and the contractor, 'the rule of the original contract cannot be insisted upon, and liquidated damages measured thereby are waived.'").

Waiver of the right to assess liquidated damages also occurs when changes are made to the work after the completion date set forth in a contract. *See e.g., A. Hedenberg & Co., Inc. v. St. Luke's Hospital*, 1996 WL 146732 at *3 (Minn. App. 1996) (copy submitted as Exhibit F hereto). *Cf., Sun Cal, Inc.* v. *United States*, 21 Cl. Ct. 31, 39 (1990) ("Where the Government elects to permit a delinquent contractor to continue performance past a due date, it surrenders its alternative and inconsistent right under the Default clause to terminate, assuming the contractor has not abandoned performance and a reasonable time has expired for a termination notice to be given.").

## III. PROPOSED CONCLUSIONS OF LAW

### A. BELL IS ENTITLED TO AN EQUITABLE ADJUSTMENT TO THE CONTRACT PRICE AND TIME DUE TO PERFORMING EXTRA WORK AND INCURRING GOVERNMENT-CAUSED DELAY, INEFFICIENCY AND CUMULATIVE IMPACT

BELL shall establish at trial that it is entitled to an equitable adjustment in the Contract price and time because the Government (i) required it to perform additional work that was not called for in the Contract, (ii) delayed performance of the work, and (iii) caused the work to be performed in an inefficient and piece-meal fashion. *See* FAR, § 52.243-4(d), Changes; *Design and Production, Inc.*, 18 Cl.Ct. at 196; and *Essex Electro Engineers*, 224 F.3d at 1289, 1292. The evidence will show that BELL incurred compensable damages of $8,153,883.00, that the final Contract completion date should be extended by 248 days, and that BELL is not liable for any liquidated damages or other costs claimed by the Government.

With regard to entitlement to an increase in the Contract price for extra work, BELL will demonstrate that it submitted 58 extra work orders ("EWOs") to the Government pertaining to additional work that it performed. The evidence will show that this work was not called for in the Contract, that the Government required BELL to perform said work, and that the Government wrongly refused to compensate BELL. BELL will demonstrate that the Contract price should be increased by $1,610,987.00, for its performance of this additional work.

Pursuant to a critical path method ("CPM") schedule analysis by its expert witness, and supported by factual testimony and other evidence, BELL will show that Government-directed additional work required after Contract Modification ("Mod.") 93 resulted in a delay to the contract substantial completion milestone of 248 days, *i.e.*, from April 30, 2001-February 8, 2002. The evidence will show that the Government caused this delay in several ways, including by issuing specifications that were defective and had to be corrected, by not timely responding to

requests for information and necessary clarifications, by not timely processing change order requests, and by issuing a myriad of changes without providing an appropriate extension of time. BELL will establish that the delay is compensable in the amount of $1,602,053.00.

Furthermore, because BELL is not responsible for the delay to the substantial completion of the project, the Government's assessment of liquidated damages is wrongful. Therefore, BELL is due the undisputed Contract balance of $563,125.00, which the Government has improperly withheld for over five years.

BELL's expert and factual testimony, along with other evidence, also will demonstrate that the changes made by the Government had a negative cumulative impact which resulted in a quantifiable loss of labor productivity of 80,317 hours, which caused inefficiency costs of $2,058,456.00. Finally, in accordance with the prompt payment provision of FAR § 52.232-27, BELL will demonstrate that, for the period of April 5, 2002, through the start of trial, it is entitled to prejudgment interest in the amount of $1,953,211.00.

Similarly, BELL's subcontractors, as set forth in their respective REAs, supporting testimony and other evidence that will be presented, shall establish entitlement to and equitable adjustment. BELL respectfully requests the Court to issue separate legal conclusions and factual findings with regard to the Subcontractors' REAs.

### B. ALTERNATIVELY, BELL IS ENTITLED TO DAMAGES BECAUSE THE GOVERNMENT'S CHANGES CONSTITUTE A CARDINAL CHANGE

In the alternative, the evidence will show that the Government's changes so fundamentally altered the scope of BELL's contractual undertaking as to constitute a cardinal change in material breach of the Contract. *Becho*, 47 Fed. Cl. at 600-01. The evidence will show that the Government made changes to virtually every aspect of the work on each floor of Building 50. The scope, breadth, number and frequency of the Government's changes are

outside the limits permitted by the changes provisions in the Contract. These changes damaged BELL by making it impossible to efficiently and timely complete the work. Accordingly, BELL is entitled to recover the reasonable value of the work it performed for the Government.

### C. THE GOVERNMENT FAILED TO PROVE ITS AFFIRMATIVE DEFENSES OF ACCORD AND SATISFACTION OR WAIVER

The evidence will show that the Government cannot prevail in proving its affirmative defenses. First, the evidence will show that the Modifications to the Contract cannot serve as an accord and satisfaction to bar BELL's claims for inefficiency and cumulative impact. As the Court has previously found, language in Mod. 93 "does not refer to claims for disruption or cumulative impact." *BELL BCI Co.*, 72 Fed. Cl. at 169. Further, by including delay damages in Mod. 93, "the parties did not thereby address any claim for disruption or cumulative impact." *Id*. at 168. Moreover, the Court has found that "[t]he terms 'direct and indirect costs' . . . lack precision and are not elsewhere explained or defined" Mod. 93. *Id*. Nor are these terms explained or defined in Mods. 94-140, which are the other modifications upon which the Government bases its accord and satisfaction defense. If these terms are held to be ambiguous, then the Government, as the party that drafted the terms, "must bear the risk of any contractual uncertainty, ambiguity or inequitable consequence." *Firestone Tire & Rubber Co.*, 444 F.2d at 551.

Putting aside the issue of ambiguity, the evidence will show that the "direct and indirect costs" referred to in the modifications did not include inefficiency and cumulative impact claims. The testimony and contemporaneous written record of the dealings between BELL and the Government will demonstrate that they did not negotiate inefficiency or cumulative impact claims as part of Mods. 93 nor Mods. 94-140, and that, not surprisingly, the Government did not provide BELL with any payment for such claims as part of any of those modifications. Thus, the

Government cannot prove at least two of the key elements of accord and satisfaction: a meeting of the minds and consideration. *BELL BCI Co.*, 72 Fed. Cl. at 168. *See also*, *David J. Tierney, Jr., Inc.*, *supra* at p. 74 (rejecting accord and satisfaction defense based on contract modifications because cumulative impact claims were "never part of the contract modification negotiations."). *Cf.*, *Atlantic Dry Dock Corp. v. United States*, 773 F. Supp. 335, 339 (M.D. Fla. 1991) (holding that language in modification expressly releasing disruption claim was ambiguous with regard to release of a cardinal change claim and "[t]hus, this Court cannot infer an intent to release the cardinal change claim from any direct reference to the release provision.").

The evidence will further show that BELL did not know, nor should it have known, of claims for inefficiency or cumulative impact when Mods. 93 and 94-140 were agreed to. Those claims were not matured as of the dates relevant to those modifications.

For similar reasons, the Government cannot establish the affirmative defense of waiver. Again, the evidence will show that, at the time of the purported waiver, claims for inefficiency or cumulative impact had not matured and, thus, there was no intention to waive such claims. Therefore, the government cannot prove the elements necessary to establish waiver. *Youngdale & Sons Constr. Co.*, 22 Cl.Ct. at 346.

### D. THE GOVERNMENT CANNOT PROVE ENTITLEMENT TO LIQUIDATED DAMAGES

As noted in subpart A above, BELL will prove entitlement to compensable delay. BELL's expert witness will present a CPM analysis demonstrating that the Government is responsible for delay to each of the interim milestones that were established by Mod. 93. Conversely, as noted in BELL's pending Motion *in Limine* to Exclude Testimony of Defendant's Proposed Expert Witnesses Regarding Delay and Alleged Liability for Liquidated Damages ("Motion"), the Government has failed to analyze the critical path for any of the interim

milestones and, moreover, failed to determine whether BELL was due an excusable delay with regard to any of the interim milestones. Thus, the Government cannot establish entitlement to any liquidated damages. The evidence will further show that the Government has failed to prove entitlement to recover the other costs it seeks to recover from BELL.

Respectfully submitted,

BELL BCI COMPANY

By counsel,

Dated: July 6, 2007

s/ Richard O. Wolf

Richard O. Wolf
Robert D. Windus
MOORE & LEE, LLP
1750 Tysons Boulevard, Suite 1450
McLean, Virginia 22102-4225
Telephone: (703) 506-2050
Facsimile: (703) 506-2051
E-mail: r.wolf@mooreandlee.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 6th day of July 2007, I caused a true and correct copy of the foregoing to be served via the Court's ECF procedures on Defendant's counsel:

Kyle Chadwick
Senior Trial Counsel
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
1100 L Street, N.W. 8th Floor
Washington, D.C. 20530

s/ Richard O. Wolf
Richard O. Wolf