# Exhibit E

80-2 BCA P 14756, GSBCA No. 4742, 1980 WL 3135 (G.S.B.C.A.)

GSBCA
Appeal of BLAKE CONSTRUCTION COMPANY, INC. 1120 Connecticut Avenue, NW Washington, DC 20036

Contract No. GS-03B-14598 Granted
October 23, 1980

Appearance for Appellant

Sheldon I. Matzkin, Esq.

Richard C. Spitzer, Esq.

Wachtel, Ross & Matzkin

5530 Wisconsin Avenue

Chevy Chase, MD 20015

Appearance for

General Services Administration

Sharon E. Nelson, Esq.

Craig T. Othmer, Esq.

Claims and Litigation Division

Office of General Counsel

General Services Administration

Washington, DC 20405

Opinion by Administrative Judge LaBella

This appeal concerns appellant's request for an equitable adjustment in the price of a construction contract. Appellant alleges that this asjustment in necessitated by extensive delays caused by numerous Government change orders. The parties raise the question of entitlement only. Upon review of the facts stipulated by the parties and the appeal files submitted by the parties, the Board concludes (1) that appellant did not assume the risk of delay and impact costs it incurred in performing unchanged work to the extent that those costs are directly attributable to changes in the defective specifications, (2) that an accord and satisfaction has not been reached with respect to those costs, and (3) that appellant is entitled to an equitable adjustment in the contract price.

Statement of Facts

The parties have submitted this appeal for decision on the basis of the following stipulations, set forth verbatim:

1. The subject contract for construction of the Forrestal Building was awarded to Appellant on July 30, 1965, in the initial dollar amount of $32,979,000.

2. The initial completion date was specified to be 860 days from receipt of a notice to proceed, which was received by Appellant on August 19, 1965.

3. Included in the contract were the General Provisions (Standard Form 23A) June 1964 Edition, which included the clauses entitled 'Changes' and 'Disputes.' The contract and specifications did not include a 'Suspension of Work' clause.

4. During the course of construction, the parties agreed that the Government-provided specifications were impossible of performance and thereby defective with regard to matching of precast and cast-in-place architectural stone; and matching of architectural stone with precast concrete and the Government's sample panel at the jobsite.

5. Change Order No. 124, issued by Final Decision, dated August 5, 1966, corrected the stone and cement match impossibility. Change Order 124 extended the contract completion date for 320 calendar days, from December 26, 1967 to November 11, 1968, and allowed $80,026 for direct costs of performing changed work. Appellant appealed the $80,026 allowance to the GSBCA, disputing the cost per cubic yard of architectural concrete upon which the $80,026 allowance was based. The Board found that the appellant paid its supplier an additional $195,583.21 for furnishing 25,836.6 cubic yards of architectural cast-in-place concrete. The Board held that appellant was entitled to, as additional compensation, $195,583.21 plus 10

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

percent overhead and 10 percent profit. Blake Construction Company, Inc., GSBCA No. 2690, 70-1 BCA ¶ 8260 (1970). The Board did not address the question of impact costs.

6. There were approximately 130 changes made to the specifications prior to the issuance of Change Order No. 124. Certain, but not all of the change orders issued for those changes state that there were no adjustments made for delay because the delay was concurrent with delays covered by Change Order No. 124.

7. During the period between August 6, 1966 and May 1, 1969, 232 change orders were issued, a majority of which were for the purpose of correcting defects and errors in the drawings and specifications.

8. After May 1, 1969, 18 change orders were issued. Therefore, a total of 380 change orders were issued, the majority of which were for the purpose of correcting defective contract drawings and specifications.

9. The parties negotiated a time extension for the delays attributable to the 232 change orders. By Change Order No. 364, issued on December 1, 1969, 173 days time extension was agreed to, extending the contract completion date from November 11, 1968, to May 1, 1979, [sic, 1969] the date of substantial completion of the work. Change Order No. 364 did not involve any adjustment of costs.

10. The parties agree that the Government-caused delays which resulted in the 173-day time extension were the controlling delays during that period.

11. The parties agree that the time extensions granted for Change Order Nos. 124 and 364, totalling 493 days, were due to respondent's errors in and omissions from the contract drawings and specifications, with the exception of time attributable to a strike at the wood door subcontractor's manufacturer's plant, in addition to the nine-day extension granted as a result of a wildcat truckers' strike.

12. Appellant was delayed in completing the contract by a total of 493 days by reason of Change Order Nos. 124 and 364, thereby causing Appellant to incur additional costs due to stretched-out contract performance, and due to impact on unchanged work being performed out of sequence and in a later period of time, which costs will be subject to audit and negotiation in the event appellant prevails on entitlement.

13. During the period that Larry Hoffman was contracting officer on the project, the parties discussed appellant's entitlement to impact costs on unchanged work resulting from delays caused by changed work. Appellant stated that it was reserving its right to claim such costs separately at a later time, and Larry Hoffman understood this to be the case.

14. Before issuance of the contracting officer's November 2, 1976 Final Decision, the parties discussed the monetary adjustment claimed by Appellant for impact costs associated with Change Order Nos. 124 and 364, as impact on unchanged work being performed out of sequence and in a later period of time. The parties could not agree upon a monetary adjustment of the claimed impact, because the contracting officer and respondent were of the opinion that the contract did not give respondent authority to reimburse appellant for impact of delays, caused by changed work, upon unchanged work being performed out of sequence and in a later period of time.Appellant's Appeal Brief, Feb. 7, 1980; Respondent's Initial Brief, Feb. 7, 1980.

In addition to the stipulated facts, the Board has considered the evidence in the appeal file and the supplemental appeal file, both of which contain documents that are material to this decision. Exhibit 3 in the appeal file is the contracting officer's final decision, which provides in part:

> Without reviewing the merits of your claim, it is necessary to deny it because:
>
> 1. Clause 3 of the General Provisions (Standard Form 23-A) June 1964 Edition, which was part of this contract, allowed adjustment of the contract only for changed work. All change orders have previously been negotiated and settled and all extensions of time have been mutually agreed to and issued.
>
> 2. There is no ‘suspension of work’ clause in this contract.
>
> The Contracting Officer is without authority to reimburse you for any reason if the contract does not permit it and Paragraph 3 of the General Provisions specifically prohibits payment for a change for any extra work or material other than that specific work changed by the Contracting Officer.

Clause 3 of the General Provisions, cited by the contracting officer in his decision, provides in relevant part:

3. Changes

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

> The Contracting Officer may, at any time, by written order, and without notice to the sureties, make changes in the drawings and/or specifications of this contract if within its general scope. If such changes cause an increase or decrease in the Contractor's cost of, or time required for, performance of the contract, an equitable adjustment shall be made and the contract modified in writing accordingly.

General Provisions, Construction Contract, Standard Form 23-A, June 1964 ed.

Discussion

The primary issue raised in this appeal is whether the contract's Changes clause authorizes appellant's contract price to be equitably adjusted for performing work at a later date than it had planned because performance was delayed due to defective Government specifications. The Government contends that United States v. Rice, 317 U.S. 61 (1942), prohibits payment under the contract for costs resulting from the extension of the performance period. The Government further asserts that even if appellant could otherwise recover impact costs, its claim is barred by an accord and satisfaction reached in Change Order Numbers 124 and 364.

1. The Rice Doctrine

Initially, we note that the parties have not defined the specific costs involved here other than to refer to them generally as delay and impact costs. The Board requested the parties to provide a more precise description of the specific costs at issue. The parties responded by requesting the Board to restrict its consideration to the narrow question of whether the Rice Doctrine bars administrative relief for extended performance costs. In this context, we provide the guidance with respect to the threshold hurdle deemed by the Government to preclude adjustment of the contract price.

Admittedly, this contractor might have brought suit on a breach theory, but the prolonged delay at issue here resulted from specification changes which both parties have treated as coming within the contemplation of the contract's Changes clause. In such circumstances, a contractor should not have to sue on a breach of contract theory to obtain relief but should be permitted whatever relief is implicit in the Changes clause. The Government has cited Broome Construction Company v. United States, 203 Ct. Cl. 521, 492 F.2d 829 (1974), and Cosmo Construction Company and the First National Bank and Trust Company of Tulsa v. United States, 194 Ct. Cl. 559, 439 F.2d 160 (1971), for the proposition that the delay claims in this case are allegations of breach over which the Board lacks jurisdiction, this being a pre-Contract Disputes Act case. However, these cases involved no defective specification, but concerned either delay in making available the worksite or delay arising out of changed conditions, matters over which the Government has less control. Here, the parties' actions in correcting the specifications under the Changes clause belie any breach.

Before the 1968 amendments to Standard Form 23A, the General Provisions of the construction contract Changes clause, the Rice Doctrine held that payment for delay and impact costs under the Changes clause was precluded on the ground that the Government had bargained for the right to make changes within the general scope of the contract without becoming liable for such costs. Respondent cites Frank Briscoe Co., Inc., GSBCA 3330, 72-2 BCA ¶ 9714 (1972); Owl Protective Company, Inc., GSBCA 2407, 67-2 BCA ¶ 6580 (1967); and Ridahl Construction, Inc., GSBCA 2051, 66-2 BCA ¶ 5771 (1966), in support of the continued application of the Rice Doctrine. However, we find a vital distinction between those cases and this. Here, the Government issued defective specifications. In its attempt to correct the defects, it made numerous changes, which we estimate as over 200. The Government did not bargain for a right to make such extensive changes in contract requirements. The question of whether such changes might have amounted to a ‘cardinal’ change was not raised by the appellant, and the Government was satisfied to have appellant perform the changed work rather than treat it as a breach of contract. Now the Government claims that the costs arising from the extension of its performance period are not compensable under the contract.

Inasmuch as the parties sought our assistance without defining the precise nature of the costs involved in this appeal, and it appears to us that the costs are generally extended performance costs, we find, as explained below, that the doctrine enunciated by the court in Rice is not applicable in this case and that the appellant should be permitted to present its claim to the contracting officer for decision even though the contract contains no clause expressly authorizing price adjustment for Government-caused interruptions and delays which extend the performance period. See James P. Purvis v. United States, 216 Ct. Cl.-- (No. 207-68, 3-17-78, 24 C.C.F. ¶ 82,223), and Norair Engineering Corp., GSBCA

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

2975, 74-1 BCA ¶ 10,645 (1974). See also Shedd, The Rice Doctrine and the Ripple Effect of Changes, 32 Geo. Wash. L.Rev. 62 (1963).

In Rice the Supreme Court described delay and impact costs as being indirect, 'consequential,' and not within the contemplation of the parties, but we think it did so only in the context of risks which normally are assumed by a contractor under the Changes clause. Rice itself actually dealt with a changed condition, and the decision refers to the doctrine of Chouteau v. United States, 95 U.S. 61, 68 (1877), which unlike this case involved the construction of a novel item (ironclad ship). Rice therefore considered the Changes clause only by analogy and was not directly concerned with the point at which a delay incident to a change made to correct defective specifications extends beyond the bounds of the parties' contemplation.

We believe the delay costs discussed in Rice were merely treated as unallowable, indirect costs because that was the bargain struck by the parties and not because these costs are intrinsically indirect. In our opinion, the increased cost of performing unchanged work at a much later time can be the direct result of the numerous changes made here to correct defective specifications.

Even though the Government reserved the right to make changes, we cannot lose sight of its correlative duty to assure that Government specifications are sufficiently accurate to protect its contractors from additional costs. United States v. Spearin, 248 U.S. 132 (1918). Costs incident to time extensions of nearly 500 days and attributable to defective specifications could not reasonably be said to represent a risk which a contractor normally would have assumed even under the pre-1968 Changes clause. Had the Government explicitly bargained for the right to create such extensive delays, its duty to provide reasonably accurate specifications would obviously have been minimal. We are not inclined to infer such an unbalanced bargain.

We cannot conclude that appellant assumed the risk of potentially unlimited extended performance costs directly attributable to extensive changes made to correct defective specifications. Any adjustment in the contract price for the changed work would not, without consideration of increased costs of performing unchanged work, be 'equitable,' as promised by the Changes clause. Arnold M. Diamond v. United States, 98 Ct. Cl. 543, 551-52 (1943). We think the contractor may be able to show that the instant extended performance costs qualify as direct damages, that it provided no contingency therefor in its bid price, and that the damage did not result from inadequate performance on its part.

2. Accord and Satisfaction

The Board also concludes that appellant's claim for an equitable adjustment is not barred by accord and satisfaction. An accord and satisfaction has been described as 'a discharge by the rendering of some performance different from that which was claimed as due and the acceptance of such substituted performance by the claimant as full satisfaction of his claim.' 6 Corbin, Contracts, § 1276 (1962). In Brock & Blevins Co., Inc., v. United States, 170 Ct. Cl. 52, 58-59, 343 F.2d 951, 955 (1966), the court stated:

> The essential elements of an effective accord and satisfaction are proper subject matter, competent parties, meeting of the minds of the parties, and consideration. And its most common pattern is a mutual agreement between the parties in which one pays or performs and the other accepts payment or performance in satisfaction of a claim or demand which is a bona fide dispute. . . .(Citations omitted.)

With respect to Change Order Number 364, it is clear that these essential elements have not been satisfied. That change order, dated December 1, 1969, grants a time extension, but is apparently silent on the issue of adjustment of the contract price. However, after that change order had been issued, appellant informed the Government through negotiations with the contracting officer that it reserved its right to an equitable price adjustment for impact costs. Stipulation No. 13. Such subsequent behavior of the parties, together with the absence of any reference to contract price in the change order, negates any implication that a mutual agreement in satisfaction of appellant's claim for impact costs was reached with respect to Change Order Number 364. Electrospace Corp., ASBCA 14520, 72-1 BCA ¶ 9455 (1972); Polyphase Contracting Corp., ASBCA 11787, 68-1 BCA ¶ 6759 (1968).

Change Order Number 124 is more difficult. As is true of Change Order Number 364, this change order does not reference any adjustment in contract price in the initial correspondence dated August 5, 1966. Supplement to Appeal File, Exhibit 32. By certified letter, dated August 10, 1966, appellant protested this change order and notified the Government that 'in order to avoid further deceleration in the work,' the

change order should be reissued 'to eliminate the present unusual form and to include only the customary references to Clause 3 [Changes]; provision for claim adjustment; . . .' On August 23, 1966, the contracting officer issued his final decision refusing to reissue Change Order Number 124. Although the precise nature and dates of subsequent negotiations are unclear from the record, a time extension of 320 days apparently was granted approximately a year and a half after the contracting officer's final decision. Moreover, there is no indication of any price negotiations at the time of this extension in the contract completion date. Again, the precise nature and dates of the price negotiations are unclear, and the record contains no evidence of any contract price adjustment in accordance with Change Order Number 124. However, Stipulation Number 5 indicates appellant was granted $80,026 for the direct costs of performing changed work. Upon appeal of that price adjustment, that amount was increased to $195,583.21 plus overhead and profit. Blake Construction Company, Inc., GSBCA 2690, 70-1 BCA ¶ 8260 (1970). Both the Board's reading of that decision and Stipulation Number 5 indicate that impact costs were not addressed by the Board at that time.

The Government relies on this Board's decision in Dawson Construction Company, GSBCA 3998, 75-2 BCA ¶ 11,563, in arguing that appellant cannot claim any further adjustment in the contract price as a result of Change Order Number 124. The Board stated in Dawson, supra, at 55,203:

> It is well established that where a Change Order is accepted without protest it is considered a final agreement as to the equitable adjustment and time extension stated therein and a bar to any further claim by the contractor.While there is no dispute that appellant did not expressly reserve its claim to impact damages, appellant nevertheless insists upon its right to assert its claim, relying upon the decision of the Court of Claims in Emerson-Sack-Warner Corp. v. United States, 189 Ct. Cl. 264, 416 F.2d 1335 (1969). That decision involved the unprotested signing of a change order that granted a time extension but was silent about any increase in the contract price and contained no reservation of a claim to such a cost adjustment. In Emerson-Sack-Warner, the court concluded:
>
> Modification No. 4 simply does not fit that mold [of requirements for accord and satisfaction]: it plainly was not 'a mutual agreement in satisfaction of a claim or demand which is a bona fide dispute.'Relying upon Emerson-Sack-Warner, appellant argues here that because neither the $80,026 price increase nor the subsequent Board decision addressed impact costs, there could have been no mutual agreement in satisfaction of a claim which was the subject of a bona fide dispute.

The Board agrees with appellant that Change Order Number 124 does not constitute a mutual agreement in satisfaction of the claim for impact costs. We need not disturb our previous holding in Dawson, that an unprotested change order constitutes a final agreement with respect to 'the equitable adjustment and time extension stated therein. . . .' (Emphasis added.) However, Dawson must be read to cover only those claims which are or should be genuine issues in dispute at the time the change order is issued. Unless specifically represented otherwise, a change order should not and cannot be interpreted to discharge a claim which is not genuinely in actual or potential dispute at that time, for there can be no mutual agreement with respect to that claim. As stated in Corbin, at 118 and 121:

> In order that a performance rendered by an obligor shall operate as a satisfaction of the claim against him, it must be offered as such to the creditor. There must be accompanying expressions sufficient to make the creditor understand, or to make it unreasonable for him not to understand, that the performance is offered to him as full satisfaction of his claim and not otherwise. If it is not so rendered, there is no accord, either executory or executed, for the reason that there are no operative expressions of agreement-no sufficient offer and acceptance.
>
> Questions of this sort arise most frequently when the amount of a money obligation is in dispute, and the debtor tenders a sum less than the amount claimed. Such a payment may be tendered either as a part payment on account or as full satisfaction. The debtor when making the payment has power to direct its application; but if he does not then express his will in the matter, the creditor may receive it as discharging that part of his claim equal to the amount paid, leaving the balance subject to litigation.
>
> So, where there are two or more claims, the payment of the amount of one of them may reasonably be taken by the creditor as intended to settle that one claim alone; it will not operate as a satisfaction of both claims unless the debtor, when paying, clearly expresses to the claimant an intention that it shall so operate.(Emphasis added; footnotes omitted.)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

In this appeal, Change Order Number 124 is an accord and satisfaction only with respect to the costs of performing the changed work-the subject 'stated therein.' There is no indication in the record that Change Order Number 124 was offered as full satisfaction of appellant's impact costs. The actual document authorizing the $80,026 equitable adjustment, from which this Board might have gleaned the true scope of that allowance, is not in the record. However, Stipulation Number 5 strongly implies that the change order contained no expression of full satisfaction of impact costs; instead, it states that the $80,026 allowance was 'for direct costs' and that the Board decision increasing that allowance 'did not address the question of impact costs.'

We conclude that the contracting officer never intended to pay for impact costs as part of the 'direct costs' allowed here for the changed work. The record suggests that impact costs were not even in dispute at the time of the equitable adjustment for the changed work, particularly in view of the commonly held notion that Rice precluded payment. There is no evidence that impact costs were ever the subject of the negotiations preceeding the equitable adjustment for the changed work. The way the parties, particularly the Government, viewed the legal situation at the time, there was no plausible manner in which they could have reached agreement on these costs.

The inescapable conclusion from the stipulation of the parties in this case is that the contracting officer felt himself without authority to pay the costs here in dispute. By our decision that the Rice Doctrine is distinguishable here, we inform the contracting officer that he has authority to negotiate and settle appellant's claim to the extent indicated in this opinion. Thus, we hold only that the contracting officer failed to accomplish a settlement which he believed he had no authority to make. See Ingalls Shipbuilding Division, Litton Systems, Inc., ASBCA 17579, 78-1 BCA ¶ 13,038.45, at 63,663.

In view of the absence of impact costs as a genuine issue of fact at the time of the equitable adjustment, and in view of the apparent silence of Change Order Number 124 with respect to the discharge of appellant's claim for impact costs, the Board concludes that Change Order Number 124 does not manifest a mutual agreement in satisfaction of appellant's present claim, and therefore does not discharge that claim by accord and satisfaction.

Decision

Appellant is entitled to recover increased costs of performing unchanged work at a later time because of extensive changes required to correct defective Government specifications.

VINCENT A. LaBELLA,

Administrative Judge

We concur:

ROBERT E. LIEBLICH,

Administrative Judge

KENNETH K. TAKAHASHI,

Administrative Judge

80-2 BCA P 14756, GSBCA No. 4742, 1980 WL 3135 (G.S.B.C.A.)
END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.