# CONSTRUCTION SCHEDULING: PREPARATION, LIABILITY, AND CLAIMS

JON M. WICKWIRE

Wickwire Gavin, P.C.
Vienna, Virginia

THOMAS J. DRISCOLL

Hill International, Inc.
Willingboro, New Jersey

STEPHEN B. HURLBUT

Wickwire Gavin, P.C.
Vienna, Virginia

ASPEN LAW & BUSINESS

Case 1:03-cv-01613-TCW Document 83-9 Filed 12/31/2007 Page 2 of 4



## § 10.15 Loss of Efficiency

It is generally very difficult to formulate a comprehensive pricing format for costs incurred as a result of disruption, lost efficiency, and the requirement that work be performed out of sequence because such costs are often not specifically identified in project cost records. Nevertheless, contractors must develop a method for pricing these costs because the potential loss can be enormous.

Proof that lost productivity has occurred requires a showing that a given unit of production actually required more labor than would have been required but for some action of the government or owner. Although courts and boards have permitted contractors some leeway in proving the amount of damages, they have held the same contractors to higher standards in terms of proving the cause of the damage or inefficiency.[66]

A number of methods can be used to prove the amount of lost efficiency. The least-favored technique, discussed earlier in this chapter, is the total cost approach. Because a contractor must prove that he is not responsible for increased costs, a successful total cost presentation is a difficult task. Utilization of the total cost approach also permits the owner to introduce evidence of damaging mistakes, errors, and inefficiencies attributable to the contractor. This can severely weaken the contractor's overall presentation.

Despite such problems the total cost approach often is both appropriate and permissible, especially if the breach by the owner is clear, but damages cannot easily be calculated. For example, if a contractor is performing remodeling work and the owner, in violation of the contract, refuses to give the contractor access to certain job areas because the owner wants to continue using them, denial of access causes a major disruption of

Case 1:03-cv-01613-TCW Document 83-9 Filed 12/31/2007 Page 3 of 4



the work. Although it may be virtually impossible to calculate precisely the loss of efficiency, the disruption, and the additional cost caused by denial of access on a large project, the contractor is still entitled to recover his costs. Contractors may also employ a *modified total cost* approach that focuses on the portion of work affected by the disrupting event.

The most-favored techniques for pricing lost efficiency consider the additional effort required as a result of a delay or disruption in order to produce the same level of output—the cause-and-effect approach. Methods used to price inefficiency in this fashion include the following.

Perhaps the most widely accepted technique, known as the *measured mile* approach, is to compare a contractor's rates of production for periods both prior to and during the "impacted" period.[67] This technique will be most effective when the comparison periods are close in time, involve very similar types of work, and occur on the same contract. A good example is comparison of productivity levels during the periods in which successive floors of a multistory office building are constructed. To the extent there is no "unimpacted" period for comparison, the contractor can utilize his productivity rates for similar work over a longer period that would reflect more normal production rates.[68] When using production rates for work on other projects, contractors should ensure that (1) the work on the other project is substantially similar to the impacted work, (2) weather conditions were similar, and (3) the average skill of the craftsmen involved on the two projects is similar (for example, do not compare union and nonunion or rural and urban projects).[69]

A number of studies published by construction industry organizations have calculated average rates for loss of efficiency due to overtime work, using industry statistical data. It is almost universally accepted that scheduling overtime on a sustained basis will have an adverse impact on labor productivity.[70] Although the additional hours worked will yield additional production, the additional output will be at a regressive rate. As an employee works more overtime hours, the rate of production will decrease and unit labor costs will increase. Industrywide studies have calculated the average lost productivity rates for given levels and periods of scheduled overtime.[71] The AGC has concluded that after several weeks

[67] United States Indus., Inc. v. Blake Constr. Co., 671 F.2d 539, 547 (D.C. Cir. 1982); Abbett Elec. Corp. v. United States, 142 Ct. Cl. 609 (1958).

[68] *See, e.g.*, Maryland Sanitary Mfg. Co. v. United States, 119 Ct. Cl. 100 (1951).

[69] Clarke-Baridon, Inc. v. Merritt-Chapman & Scott Corp., 311 F.2d 389, 395 (4th Cir. 1962).

[70] *See Scheduled Overtime Effect on Construction Projects,* Business Roundtable (1980); *Overtime, Construction and Productivity,* Associated General Contractors of America, National Joint Guideline No. 8 (1979); *Overtime v. Productivity,* 35 Electrical Contractor, 1 (1970).

[71] *See, e.g.*, Scheduled Overtime Effect on Construction Projects.

of overtime, working five 10-hour days, the productive value of a labor dollar drops to less than 74 percent of a normal work week labor dollar. If six 10-hour days are worked, the productive value is less than 62 percent of a normal work week, and when seven 12-hour days are worked, the productive value of a labor dollar is less than 40 percent of a normal work week labor dollar.[72] These industry studies are useful in substantiating lost-efficiency claims. However, additional evidence pertaining to the loss of efficiency on the project must be introduced to corroborate the industry data.[73]

Once the loss-of-efficiency factor is determined, that factor should be applied to all labor costs incurred in performing affected work during the impact period. In making this calculation, contractors should include all indirect labor burden that is typically incurred on the type of project in question. These indirect costs (other than overhead) should be calculated on a daily, as opposed to percentage, basis.

---

[72] Overtime, Construction and Productivity, Associated General Contractors of America, National Guideline No. 8 (1979).

[73] Capital Elec. Co., GSBCA No. 5316, 83-2 BCA ¶ 16,548 (1983), *rev'd on other grounds,* Capital Elec. Co. v. United States, 729 F.2d 743 (Fed. Cir. 1984).