# APPENDIX 2

# BRUNER AND O'CONNOR ON CONSTRUCTION LAW

PHILIP L. BRUNER
PATRICK J. O'CONNOR, JR.

VOLUME 1
CHAPTERS 1 to 4

WEST GROUP
A THOMSON COMPANY

change, is not, in and of itself, outcome determinative if other circumstances exist establishing a material and substantial alteration in the original undertaking. Although adding a wing or an additional floor[2] to the building under construction is indicative of a potential "cardinal" change, multiple changes within the structure itself, which have significant disruptive effect on the contractor's performance, cost and time, may also constitute a "cardinal" change. The ultimate determination is fact specific, and may include these factors:

1. Individual and cumulative impact of changes;[3]
2. Degree of added complexity and difficulty of the work;[4]
3. Disruption caused to the contractor's performance;[5]
4. Overall impact upon contract cost and time of performance;[6] and

---

in this case the total undertaking covered by the writing, the amount of work affected by the alterations and the net change in the cost of performance. In dealing with contract provisions allowing alterations or modifications an appropriate standard for substantiality is whether such change unreasonably alters the character of the work or unduly increases its cost, or effects such material change as to constitute a radical departure from the original contract.").

[2]See Lamson v. Maryland Casualty Co., 196 Iowa 1185, 194 N.W. 70 (1923) (additional story to office building was outside scope of contract and discharged surety).

[3]See C. Norman Peterson Co. v. Container Corp. of America, 172 Cal. App. 3d 628, 218 Cal. Rptr. 592 (1st Dist. 1985), in which the court held that the cumulative effect of numerous design changes constituted an "abandonment" of the contract and opined:

> in the specific context of construction contracts, . . . it has been held that when an owner imposes upon the contractor an excessive number of changes such that it can fairly be said that the scope of the work under the original contract has been altered, an abandonment of contract properly may be found.

[4]See Airprep Technology, Inc. v. U.S., 30 Fed. Cl. 488, 39 Cont. Cas. Fed. (CCH) ¶ 76634 (1994) (holding that defective specifications constituted a "cardinal" change, where government's interpretation required the contractor to construct on site a complex cylindrical structure of thick steel in lieu of the prefabricated sheet metal box that would have met the original contract requirements).

[5]See Bagwell Coatings, Inc. v. Middle South Energy, Inc., 797 F.2d 1298 (5th Cir. 1986) (holding that directed changes in the sequencing of fireproofing subcontractor's performance constituted a material breach of contract). The timing of changes can be important. Changes early on often are less disruptive than later changes. See Aragona Const. Co., Inc. v. U. S., 165 Ct. Cl. 382, 1964 WL 8634 (1964).

[6]See Edward R. Marden Corp. v. U. S., 194 Ct. Cl. 799, 442 F.2d 364 (1971) (change increased contract almost 100%); Peter Kiewit Sons' Co. v. Summit Const. Co., 422 F.2d 242 (8th Cir. 1969) (change increasing cost of backfill work